[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-14289
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 06, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00134-CV-FTM-29-SPC

ROBERT W. CRENSHAW,

Plaintiff-Appellee,

versus

ROBERT LISTER,
arresting officer,
EMMITT MERRITT,
assisting arrest officer,

Defendants-Appellants,

PAUL TIERNEY,
acting detective, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(February 6, 2009)**

Before CARNES, WILSON and FAY, Circuit Judges.

PER CURIAM:

Defendant Deputies Robert Lister and Emmitt Merritt appeal from the district court's denial of their summary judgment motion on qualified immunity grounds in Robert W. Crenshaw's pro se civil rights action, brought pursuant to 42 U.S.C. § 1983. In his complaint, Crenshaw alleged that Lister's use of a canine to apprehend him constituted excessive force and that Merritt failed to intervene and stop the canine attack. For the reasons set forth below, we vacate the district court's order and remand.

## I.

Crenshaw, proceeding pro se, filed a third amended complaint against, inter alia, Lister and Merritt, Charlotte County Sheriff's Deputies, in their individual capacities. Crenshaw brought his complaint pursuant to 42 U.S.C. § 1983, in which he alleged various constitutional violations and sought $3 million in compensatory damages and $3 million in punitive damages.

The complaint alleged the following facts, some which were taken from police reports that Crenshaw attached to the complaint. On November 28, 2001, the Charlotte County Sheriff's Office ("CCSO") received a report that an armed robbery had occurred at a Walgreen's Drug Store. Deputy Prummell was en route

2

to the store when he was advised that another robbery had occurred at a K-Mart in Port Charlotte and that the suspect vehicle was being pursued by other deputies. During that pursuit, Crenshaw, the suspect, subsequently abandoned the vehicle and jumped into a canal, where he continued to flee on foot. Deputy Lister, with his canine assistant "Eddie," and Deputy Merritt began to track Crenshaw into a wooded area. Neither Lister nor Merritt ever lost sight of Crenshaw, and Lister never warned Crenshaw that he had a canine. The complaint is not entirely clear on what happened next:

> Plaintiff yelled to deputies his location and intent to surrender. The next communication from Crenhsaw was for Sheriff's deputies to get the dog off him. While Officer Prummell was in the process of catching up to the accused, the K-9 dog, and his handler (Lister) Crenshaw had been handcuffed. Prummell then instructed Officer Lister to pull his dog back, because Prummell knew Crenshaw personally. Crenshaw was again searched. Crenhsaw had no weapons in his possession. Plaintiff did not attempt to resist the K-9 dog and did not provoke the dog.

Crenshaw received 31 dog bites and was screaming in pain at the time.

In Count One of the complaint, Crenshaw alleged that Lister's use of the canine to apprehend him constituted excessive force, in violation of his rights under the Fourth and Fourteenth Amendments. Specifically, he alleged that Lister unnecessarily ordered the canine to attack him because Crenshaw called out his location in an attempt to surrender, he was within sight of the officers, he was

3

unarmed, and the officers had no reason to believe that he posed a threat. Crenshaw reiterated that Lister failed to announce that he had a canine unit so as to give Crenshaw an opportunity to surrender, and he asserted that "the dog was told to attack the plaintiff for purely sadistic reasons." In this respect, Crenshaw alleged that "[p]olice reports show that the plaintiff was lying on the ground, had called out his location, and was visible to officers." In Count Three of the complaint, and relying on a police report that Merritt filed, Crenshaw alleged that Merritt's failure to stop the canine attack constituted excessive force, in violation of the Fourth and Fourteenth Amendments.

Crenshaw attached several documents to his complaint, the following of which are relevant to this appeal. He first attached a report of the incident prepared by Deputy Prummell. In the report, Prummell stated that he was advised that there had been an armed robbery at a Walgreen's and, while proceeding to the store, was informed that there had been another armed robbery at a K-Mart. He then learned that deputies were in pursuit of the suspect vehicle and that, at one point, the suspect abandoned the vehicle, jumped into a canal, and fled from the pursuing officers. After arriving at the canal, Prummell described what happened next:

4

K-9 DFC Lister responded and began a track and located the accused hiding in the pepper trees along the South shoreline of the North Spring Lake waterway . . . . I heard the accused yelling to get the dog off of him. As I made my way through the trees I saw DFC Lister handcuff the accused. I advised DFC Lister that I had control of the accused, who was personally known to me, and he pulled his K-9 back. I patted the accused down and asked him where the gun was. He told me he did not have one. He was screaming in pain from the dog bites he received on both legs and advised he was unable to move on his own. I requested that someone call for an ambulance and then I proceeded to carry the accused out of the woods.

Crenshaw attached a report of the incident prepared by Deputy Lister.

Lister reported that, at approximately 5:45 pm on November 28, 2001, a call over the radio reported that an armed robbery had occurred at a K-Mart and that officers were in pursuit of the suspect. The suspect then crashed his vehicle into a marked patrol car and fled into a heavily wooded area by foot. When Lister arrived at the scene, he described what happened:

I began to conduct an on lead area search for the suspect. Using K9 Eddy I began to crawl through the wooded area. At one point I was crawling on my belly to get through the dense brush. I heard a subject state that I am over here. Just at that moment my K9 partner made contact with the suspect. The suspect yelled for me to get the dog off. I took about 3 to 5 seconds to crawl to the area where the suspect was hiding. Once I made it to the suspect I told him to give me his hands. He did not immediately give up his hands. I grabbed the suspects right hand. Still unaware if the suspect was still armed I did not remove the K9 until I had both hands accounted for and secured. . . .

5

Crenshaw attached a report of the incident prepared by Deputy Merritt. Merritt described the events leading up to Crenshaw's escape into the woods consistently with Lister's report. He then described what happened next:

> Dfc Lister arrived with K-9 Eddie. I then went with Dfc. Lister as a back up officer. We began to track through a thick wooded area along the canal, causing us to crawl on our stomachs to get through the brush. I then heard a subject yell I am over here. K-9 Eddie immediately made contact with the subject. I observed the subject laying on his stomach in the brush, with his hands hidden. He was ordered to show his hands but refused. Dfc. Lister made contact with the subject. At this point we [were] unable to determine if he was still armed. Dfc Lister secured both hands and placed him into handcuffs. Subject was turned over to other units on scene. I was unable to assist in securing the subject due to the subject being covered up in thick brush.

Crenshaw attached a report from the hospital describing his injuries. The report provided that Creshaw had multiple puncture wounds to his legs, including a gaping wound – a 3.5 centimeter laceration – to his left leg. The latter wound appeared to have been treated with six stitches. Crenshaw also had a scratch on his right scapular area caused by rubbing up against the brush.

After Lister and Merritt answered the complaint, in which they denied the allegations and asserted that they were entitled to qualified immunity, they filed a joint motion for summary judgment. Analyzing Crenshaw's excessive force claims under the Fourth Amendment, they argued that they were entitled to

6

summary judgment and qualified immunity because the use of the canine was appropriate in light of the fact that they were in pursuit of an armed robbery suspect who had fled from the police and was hiding in a densely wooded area at night. With respect to Merritt, they argued that summary judgment was appropriate because he was unable to intervene and stop the canine from attacking Crenshaw. Lister and Merritt did not submit any evidence relevant to this appeal, but rather took all of their facts from the police reports attached to Crenshaw's complaint, noting that these attachments were considered part of the complaint under Fed.R.Civ.P. 10(c).

Crenshaw responded to the summary judgment motion. In the factual portion of his response, he asserted that "[t]he K-9 was not called-off from the plaintiff until the plaintiff was cuffed and his hands secured, implying defendants' allowed the K-9 to continue its attack on plaintiff, irrespective of whether plaintiff submitted to the demands of the defendants." He stated that summary judgment was inappropriate because there were several disputed factual issues, including, inter alia, whether he resisted so as to warrant being attacked by the canine, whether the use of force was excessive or malicious, and whether it really took Lister several seconds to reach Crenshaw's location in light of the number of times that the canine bit him. With respect to the first point, Crenshaw asserted that his

complaint had "clearly allege[d] that he had submitted to the demands of the defendant's [sic] during his arrest, was not resisting or acting aggressive in any manner and [was] cooperating fully." With respect to Merritt's failure to intervene, Crenshaw cited case law for the proposition that an officer may be held liable for failing to take reasonable steps to protect a victim from another officer's use of excessive force.

The district court denied the joint summary judgment motion. The court first concluded that Crenshaw's excessive force claims were governed by the Fourth Amendment's objective reasonableness standard, requiring the court:

> to evaluate the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting or attempting to flee, the need for the application of force, the extent of the injury inflicted, and whether the force used was reasonably proportionate to the need for the force.

With respect to Crenshaw's claim against Lister, and taking the facts in a light most favorable to Crenshaw, the court concluded that "a reasonable jury could find that the severity of the injuries incurred by plaintiff were excessive in light of the circumstances of the apprehension." The court explained that, "[w]hile a certain amount of force was necessary, in light of Lister's reasonable belief that Crenshaw was armed, a reasonable jury could find that allowing the canine to bite plaintiff

8

thirty-one different times was excessive." The court found that there was a genuine issue of material fact as to whether Lister encountered any resistance from Crenshaw when attempting to handcuff him, and this "level of resistance directly impact[ed] the analysis of whether excessive force was used." Therefore, the court denied Lister summary judgment.

The court also denied Merritt summary judgment. Although the court acknowledged that Merritt's report stated that he was unable to assist Lister in securing Crenshaw due to the thick brush, the court found that Crenshaw, in his response to the defendants' summary judgment motion, alleged that Merritt was in a position to intervene, thereby creating a genuine issue of material fact on this point.

Turning to the issue of qualified immunity and, after finding that Crenshaw had to establish the violation of a clearly-established right, the court concluded that, under Crenshaw's version of the facts, "no reasonable officer could have believed that the amount of force utilized by Officer Lister was reasonable," explaining:

> Despite lying on the ground, and having affirmatively expressed his intent to surrender and not resisting Officer Lister, plaintiff was repeatedly bitten by Officer Lister's canine, resulting in thirty-one puncture wounds to both legs, including one "3.5 cm laceration" to his left leg. From the perspective of a reasonable officer, plaintiff

9

could have been subdued with much less force and without the need to severely injure him. Therefore, the Court finds that neither Officer Lister nor Officer Merritt are entitled to qualified immunity, and thus denies summary judgment on Counts One and Three of the Third Amended Complaint.

Lister and Merritt appealed from the court's order.

## II.

### A.    __Jurisdiction__

We have interlocutory appellate jurisdiction under 28 U.S.C. § 1291 "over legal issues that are the basis for a denial of summary judgment on qualified immunity grounds." Cottrell v. Caldwell, 85 F.3d 1480, 1484 (11th Cir. 1996); see Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (holding that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment"). However, we do "not have interlocutory jurisdiction to review the denial of summary judgment where the only issues appealed are evidentiary sufficiency issues." Cottrell, 85 F.3d at 1484; see Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995) (holding, in the qualified immunity context, that a district court's summary judgment order determining only

10

"which facts a party may, or may not, be able to prove at trial" is not appealable under § 1291).

In this case, the district court's denial of summary judgment on qualified immunity grounds turned on a question of law. This is so because the court found that a jury, taking the facts in a light most favorable to Crenshaw, could have found that Lister and Merritt violated Crenshaw's clearly-established right to be free from excessive force. Because Lister and Merritt appeal from this legal conclusion, we have jurisdiction over the court's order. See Dolihite v. Maughon By and Through Videon, 74 F.3d 1027, 1034 n.3 (11th Cir. 1996) ("[T]he primary argument of each appealing public official in this case is that a reasonable public official could have believed that his or her actions were lawful, in light of clearly established law and the information possessed by each official. This argument raises the core qualified immunity issue and is, therefore immediately appealable under Mitchell . . . and Johnson.") (internal citation omitted).[1]

---

[1] The district court also denied summary judgment on the ground that genuine issues of material fact existed. In this respect, the Supreme Court has "specifically rejected the contention that a district court's holding that material issues of fact remain bars interlocutory appellate review of related issues of law . . . ." Cottrell, 85 F.3d at 1485; see Behrens v. Pelletier, 516 U.S. 299, 312, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996); Hadley v. Gutierrez, 526 F.3d 1324, 1328 (11th Cir. 2008) ("We also have jurisdiction if the district court simply rules that 'material issues of fact' precluded summary judgment.").

**B.     Standard of Review**

> In conducting <u>de novo</u> review of the district court's disposition of a summary judgment motion based on qualified immunity, we are required to resolve all issues of material fact in favor of the plaintiff. We then answer the legal question of whether the defendant is entitled to qualified immunity under that version of the facts. Indeed, we approach the facts from the plaintiff's perspective because the issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law.

<u>Lee v. Ferraro</u>, 284 F.3d 1188, 1190 (11th Cir. 2002) (quotations, citations, and alterations omitted).

**C.     Qualified Immunity**

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee</u>, 284 F.3d at 1194 (internal citation and quotation omitted).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. (quotations omitted). In this case, it is clear that Lister and Merritt were both performing discretionary duties when pursuing and apprehending Crenshaw. See id. ("In this case, there can be no doubt that Ferraro was acting in his discretionary capacity when he arrested Lee.").

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee, 284 F.3d at 1194. In evaluating whether the plaintiff has met his burden, we ask "whether taken in the light most favorable to the party asserting the injury, do the facts alleged show that Defendants' conduct violated a constitutional or statutory right? If so, the second question is whether the right, be it constitutional or statutory, was clearly established."[2] Hadley, 529 F.3d at 1329 (quotation, internal citation, and alterations omitted).

## D.    **Excessive Force**

"We consider de novo whether, under [the non-movant's] version of the facts, his constitutional rights to be free from excessive force were violated."

---

[2] Although the Supreme Court has recently held that lower courts are no longer required to address these questions in order, it recognized that it is "often beneficial" to do so. Pearson v. Callahan, __ S.Ct. __, slip op. at 1-2, 10-11 (No. 07-751) (Jan. 21, 2009).

13

Galvez v. Bruce, __ F.3d __, No. 08-10531, manuscript op. at 9 (11th Cir. Dec. 18, 2008) (emphasis added). "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." Brosseau v. Haugen, 543 U.S. 194, 197, 125 S.Ct. 596, 598, 160 L.Ed.2d 583 (2004) (citing Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) and Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Thus, "[t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). In this respect, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S.Ct. at 1872.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396, 109 S.Ct. at 1871 (quotations omitted). This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

14

flight." Id. at 396, 109 S.Ct. at 1872. In addition, other considerations include: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." Hadley, 526 F.3d at 1329 (quotation omitted). In this respect, the Supreme Court has "recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396, 109 S.Ct. at 1872.

## III.

As mentioned above, Crenshaw alleged that Deputy Lister's use of the canine violated Crenshaw's right to be free from excessive force. Crenshaw also alleged that Deputy Merritt violated his right to be free from excessive force by failing to intervene and stop the canine attack. We address these claims in turn.[3]

---

[3] Also included in Crenshaw's excessive force claims against Lister and Merritt were various, miscellaneous allegations. However, Crenshaw made clear in his summary judgment response that these allegations were not the basis for his excessive force claims against Lister and Merritt and, therefore, we decline to address these allegations on appeal. See Transamerica Leasing, Inc. v. Institute of London Underwriters, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001) (arguments not raised in response to a summary judgment motion are waived for purposes of appeal), aff'd after remand, 430 F.3d 1326 (11th Cir. 2005).

15

**A.    Deputy Lister's Alleged Use of Excessive Force**

Before analyzing the threshold issue of whether Lister violated Crenshaw's constitutional right to be free from excessive force, it is first necessary to determine the operative facts surrounding the canine incident.   Although it is unusual for a case decided at the summary judgment stage, the only facts relevant to the issue on appeal are contained in Crenshaw's complaint, the police reports attached to his complaint, and his summary judgment response.

According to the allegations in the complaint, police officers pursued Crenshaw in his vehicle under the belief that he had just committed one, and possibly two, armed robberies.  Crenshaw did not relent and, at one point during the pursuit, exited his vehicle and fled by foot into a wooded area.  Lister, who never lost sight of Crenshaw, tracked him into this wooded area, at which point Crenshaw laid on the ground and shouted out his location in an attempt to surrender.  The canine then located Crenshaw and bit him 31 times in the legs.  At no point did Crenshaw resist Lister or the canine.  According to Crenshaw's summary judgment response, Lister did not call off the canine until after he had handcuffed Crenshaw.

In addition to the allegations in the pleadings, Crenshaw's version of the incident also includes the information contained in the police reports attached to

16

his complaint. This is so because these attachments to the complaint constitute "a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Moreover, as part of Crenshaw's complaint, the police reports add several relevant facts to the operative version of the incident, which, notably, do not conflict with any of Crenshaw's allegations. First, the police reports of Lister and Merritt provide that the incident occurred some time after 5:45 p.m. in late November, suggesting that it was dark outside.[4] Second, these police reports clarify that Crenshaw did not peacefully exit his vehicle and flee into the woods, but rather did so only after crashing his vehicle into a marked patrol car. Third, all three police reports establish that the three officers believed that Crenshaw was armed.

In addition to supplementing Crenshaw's general allegations, the police reports also contradict one of Crenshaw's specific allegations, namely that Lister and Merritt never lost sight of Crenshaw in the woods. This allegation is significant because, if true, it would have given some credibility to Crenshaw's attempt to surrender and potentially rendered the use of the canine unnecessary. However, the police reports submitted by Lister and Merritt indicate that the first

_____

[4] Indeed, as Lister and Merritt note on appeal, the U.S. Naval Observatory provides that sunset occurred at 5:34 p.m. in Port Charlotte, Florida, on November 28, 2001. See U.S. Naval Observatory, Astronomical Applications Department, Sun and Moon Data for One Day, www.ao.usno.navy.mil.

17

time they became aware of Crenshaw's precise location was when he shouted out "I am over here." Indeed, there would have been no reason for Crenshaw to shout this remark if the officers already knew where he was. In addition, Merritt's report provided that Crenshaw was "covered up in thick brush" and, in this respect, Crenshaw's speculative allegation about what the officers saw is called into further doubt by the fact that Lister and Mister both stated that the brush was so thick that they had to crawl on their stomachs just to make their way through the woods.

It is the law in this Circuit that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007); see Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").[5] Because the officers' police reports attached to the complaint refute Crenshaw's conclusory and speculative allegation about what the officers saw, we do not credit Crenshaw's allegation. This conclusion is further supported by the fact that Crenshaw relied on the police reports in his complaint to support

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

18

this allegation.  See Thompson v. Illinois Dept. of Professional Regulation, 300 F.3d 750, 754 (7th Cir. 2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.").

Under Crenshaw's version of the incident, as determined above, Crenshaw has not shown that Lister violated his constitutional right to be free from excessive force.  This is so because, under the circumstances, it was objectively reasonable for Lister to use a canine to locate and apprehend Crenshaw.  Crenshaw was suspected of having committed one, and perhaps two, armed robberies, which can be characterized as a serious crime.  He actively fled from the police – first in his vehicle, and then by foot after crashing his vehicle into a marked patrol car – and attempted to hide in a densely wooded area.  And because Crenshaw was suspected of armed robbery and was a fugitive from the police, Lister had every reason to believe that Crenshaw was armed and dangerous.  Thus, all three factors identified by the Supreme Court in Graham weigh heavily against Crenshaw.

This case is therefore unlike Priester v. City of Riviera Beach, Fla., 208 F.3d 919 (11th Cir. 2000).  In that case, we held that a police officer, who allowed his dog to bite the plaintiff for at least two minutes, was not entitled to qualified immunity where the plaintiff was suspected of stealing merely $20 in snacks from

a golf shop, immediately submitted to the police, did not attempt to flee or resist arrest, and did not pose a threat of bodily harm to the officers or anyone else. Id. at 927. Thus, in Priester, unlike this case, the three Graham factors all weighed heavily in the plaintiff's favor. See also Galvez, __ F.3d at __, No. 08-10531, manuscript op. at 10-12 (concluding that excessive force was used in slamming a suspect into a concrete structure where he was suspected of having committed misdemeanors, was handcuffed, and offered no physical resistence); Reese v. Herbert, 527 F.3d 1253, 1274 (11th Cir. 2008) (concluding that there was excessive force used against the plaintiff where he was suspected of having committed a misdemeanor, did not pose an immediate threat of harm, and was not actively resisting or evading arrest); Lee, 284 F.3d at 1198 (concluding that a police officer used excessive force where the plaintiff had committed a minor crime, did not pose any threat to the officer or others, and was not actively resisting or attempting to flee); Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000) (concluding that officers used excessive force where they severely beat a handcuffed individual who neither resisted nor attempted to flee).

Instead of analyzing these factors, the district court accepted Crenshaw's primary contention that there was no reason for Lister to use the canine because Crenshaw had shouted out his location in an attempt to surrender. Even assuming,

20

as we must, that Crenshaw was legitimately attempting to surrender, it was objectively reasonable for Lister to question the sincerity of Crenshaw's attempt to do so and use the canine to apprehend him. Lister was not required to risk his own life by revealing his position in an unfamiliar wooded area at night to an armed fugitive who, up to that point, had shown anything but an intention of surrendering.[6]

Crenhsaw pointed out below that Lister did not call off the canine until he had handcuffed Crenshaw. However, as just discussed, Lister reasonably believed that Crenshaw was armed and dangerous. Thus, unlike the officer in Priester, Lister would have been placing himself at risk had he called off the canine before ensuring that Crenshaw was fully secured. This is true regardless of whether Crenshaw was actively resisting arrest at that point, as Lister had no reason to trust that Crenshaw would not suddenly attempt to do him harm.[7] While it would have been objectively unreasonable for Lister to allow the canine to continue attacking Crenshaw after he was secured, see Hadley, 526 F.3d at 1330 ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest

---

[6] For the same reasons, Lister acted reasonably in not alerting Crenshaw that he had a canine.

[7] Although the police reports indicate that Crenshaw did not immediately surrender his hands when Lister was attempting to handcuff him, we resolve this factual dispute in Crenshaw's favor and assume that Crenshaw did not actively resist Lister at this point.

21

constitutes excessive force."), Crenshaw does not allege that this occurred. Thus, under Crenshaw's version of the facts, there is no indication that Lister's use of the canine involved greater force than necessary or was in any way "malicious" or "sadistic." See id. at 1329.

The only other factor potentially cutting in Crenshaw's favor is that he suffered serious, though nowhere near life-threatening, injuries as a result of the canine attack. The district court, however, gave this factor disproportionate weight and, in doing so, ignored the surrounding circumstances of the case. While Crenshaw suffered serious injuries, these injuries were not the result of disproportionate or excessive force, but were rather the result of objectively reasonable actions taken by Lister to apprehend and secure what he reasonably believed to be an armed fugitive.

In sum, we conclude that Lister's use of the canine was objectively reasonable under the circumstances and, therefore, did not violate Crenshaw's constitutional right to be free from excessive force. Thus, because there was no constitutional violation, we need not address whether the constitutional right at issue was clearly established.

**B.** **Deputy Merritt's Alleged Failure to Intervene**

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Id. at 1330 (alteration omitted). However, "it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." Id.

Crenshaw alleged that Merritt witnessed the canine attack, yet failed to intervene and stop it. However, because Lister did not violate Crenshaw's right to be free from excessive force, Merritt had no attendant obligation to intervene. Thus, the district court erred by denying Merritt summary judgment.

**IV.**

In sum, we conclude that the district court erred by finding that Deputies Lister and Merritt violated Crenshaw's right to be free from excessive force. Under the circumstances, it was objectively reasonable for Lister to use the canine to apprehend Crenshaw, an armed robbery suspect who was actively fleeing from the police. And because Lister did not use excessive force, Merritt had no obligation to intervene. Accordingly, we vacate the district court's order and remand to the district court with instructions to grant Lister and Merritt summary judgment on qualified immunity grounds.

**VACATED AND REMANDED.**