[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 6, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16538
Non-Argument Calendar

_____

D. C. Docket No. 07-00134-CV-T-30-TBM

WESLEY CARUTHERS, JR.,

Plaintiff-Appellee,

versus

SHAWNEE MCCAWLEY,
Polk County Sheriff Dept. acting under
color of State Law, in his individual
capacity and his official capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 6, 2009)

Before CARNES, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Deputy Sheriff Shawnee McCawley brings this interlocutory appeal from the district court's denial of summary judgment on qualified immunity grounds. Wesley Caruthers sued McCawley under 42 U.S.C. § 1983, alleging that McCawley's use of deadly force in apprehending him after he had surrendered—specifically, shooting at him four times, hitting him once in the chest and once in the spine—constituted excessive force in violation of the Eighth and Fourteenth Amendments to the United States Constitution.[1] The district court found that McCawley was not, as a matter of law, entitled to qualified immunity because, viewing the facts in the light most favorable to Caruthers, a reasonable jury could find that McCawley violated Caruthers's clearly established constitutional right to be free from excessive force.[2]

We review <u>de novo</u> a district court's grant or denial of summary judgment, applying the same legal standards as the district court. <u>See</u> <u>Whatley v. CNA Ins. Cos.</u>, 189 F.3d 1310, 1313 (11th Cir. 1999). Under Federal Rule of Civil

---

[1] Caruthers sued McCawley in both his personal and official capacities. The district court dismissed the official capacity claim on the grounds that Caruthers's complaint failed to set forth facts indicating that the alleged constitutional violation arose out of a custom or policy of the Sheriff's Office. Caruthers does not challenge this determination. Therefore, this appeal concerns only Caruthers's personal capacity claim and whether McCawley is entitled to qualified immunity from suit.

[2] This court has interlocutory appellate jurisdiction to consider legal issues that are the basis for a denial of summary judgment on qualified immunity grounds. <u>See</u> <u>Crenshaw v. Lister</u>, 556 F.3d 1283, 1288 (11th Cir. 2009) (citing cases). Whether a reasonable jury could have found that McCawley violated Caruthers's clearly established rights is a question of law. <u>Id.</u> at 1289.

Procedure 56(c):

> [s]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (internal marks and citations omitted).

The following facts were before the district court at summary judgment: It is undisputed that before his arrest, Caruthers was wanted by law enforcement for several bank robberies, including one earlier in the day of his arrest during which Caruthers had threatened to kill the bank teller. It is further undisputed that on the day of his arrest, Caruthers and a woman named Sandy Gibbons were discovered in a motel room by local law enforcement officers.[3] Caruthers and Gibbons initially refused to exit the room, and negotiations ensued. During the negotiations, five members of an Emergency Response Team ("ERT"), including

---

[3] The officers believed that Gibbons, who was apparently Caruthers's girlfriend, was a hostage because they could see through the motel room window that Caruthers was blocking her from leaving the room and could hear the two arguing. Caruthers did not appear to be physically harming Gibbons.

McCawley, assumed a "stack" formation outside of the room. McCawley carried a shield and a .45 caliber handgun and stood at the front of the stack as the "shield man." After two hours of negotiations between Caruthers and the officers, the ERT members learned that Gibbons was going to come out of the room. The door of the motel room opened, and Caruthers came out.

What happened next is the subject of the factual dispute between the parties. According to Caruthers's sworn complaint, before opening the door, he shouted to the officers that he was coming out to surrender. He then exited the room with his hands in a "surrender position," holding a white towel, in accordance with earlier instructions from one of the officers. When he did not see any deputies in front of him, he turned to his right and saw the ERT kneeling down behind a shield. He heard officers yelling at him to raise his hands higher and turn around and get on the ground. He attempted to raise his hands higher, at which time he was shot in the chest by McCawley. At that point, he turned and ran in the opposite direction, after which McCawley shot at him three more times, striking him in the spine. While he was fleeing, another officer shot at him using a shotgun loaded with non-lethal "bean bags." After he was shot in the spine, Caruthers fell to the ground, at which point a third officer shot him with a taser gun.[4]

---

[4] Caruthers survived the shootings but suffered severe injuries requiring multiple surgeries.

4

McCawley asserts that Caruthers was not holding his hands in a surrender position and appeared instead to be holding up a "dark object" when he exited then motel room "looking both ways," then "suddenly turning and spinning his body towards [McCawley.]" At least four officers present at the scene stated under oath during a post-incident investigation that they saw Caruthers holding a towel when he exited the motel room and did not see a weapon. Therefore, in addition to the allegations in Caruthers's sworn complaint, the post-incident interviews clearly establish a genuine issue of material fact regarding whether a reasonable officer would have believed that Caruthers was armed and deadly force was justified. The district court did not err in denying summary judgment on qualified immunity grounds.

**AFFIRMED.**