[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11526
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 8, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:08-cv-00140-LC-EMT

ROGER A. FESTA,

Plaintiff - Appellee,

versus

SANTA ROSA COUNTY FLORIDA,

Defendant,

SANTA ROSA COUNTY SHERIFF'S OFFICE,
ADAM TEICHNER,
DOUGLAS BURGETT,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 8, 2011)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Deputy Adam Teichner and Deputy Douglas Burgett (collectively, "Defendants") appeal the district court's order denying their summary judgment motion based on qualified immunity. Roger Festa's complaint alleges that he was unlawfully stopped, detained, arrested and jailed for driving under the influence of alcohol ("DUI") without probable cause in violation of his Fourth Amendment right to be free from unreasonable searches or seizures of his person. On appeal, Defendants argue that the district court erred when it denied them qualified immunity because they had actual, and arguable, probable cause for Festa's arrest and continued detention, and in any event, a violation of Festa's rights was not clearly established at the time of the arrest and detention. After careful review, we reverse and remand.[1]

On interlocutory appeal, we review de novo the district court's denial of summary judgment as to qualified immunity. Bozeman v. Orum, 422 F.3d 1265, 1267 (11th Cir. 2005). "In doing so, we do not make credibility determinations or

---

[1] We had stayed this appeal for 90 days following the filing of Appellee's motion to stay proceedings, which we had construed as a suggest of Appellee's death, to allow time for an attorney to enter an appearance on behalf of Appellee's personal representative and to file a motion for substitution of parties and an answer brief on the representative's behalf. Because no attorney entered an appearance or filed a motion and answer brief by the end of the 90-day period, the stay was automatically lifted, and we are resolving the appeal on Appellant's brief alone.

choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." Id.

The facts, for purposes of summary judgment, are these. On April 9, 2005, Defendant Deputy Burgett received a police report that another motorist had placed a 911 call after observing a vehicle matching the description of Plaintiff Festa's vehicle that was swerving in and out of traffic. Burgett then spotted Festa's vehicle, and while following from behind, he observed the vehicle make a sudden lane change in order to avoid a car ahead of it that was about to turn off the highway. Burgett also observed that the vehicle was straddling the center lane of the highway for a short period of time and, while the vehicle was not speeding, it kept varying its speed.

Burgett then stopped Festa's vehicle and asked Festa if he had been drinking. Festa responded that he had consumed one drink earlier in the afternoon. Evidently in response to Burgett's description of how Festa was driving, Festa stated that he and his wife, who were not familiar with the area, were trying to find a place to eat. Burgett detected a moderate odor of alcohol and noted that Festa was smoking, perhaps to conceal the odor.

Defendant Deputy Teichner then arrived as back-up, and because he was certified to perform a "Horizontal Gaze Nystagmus" test, he did so on Festa. Based on the results of this and other field sobriety tests, Festa was arrested and taken to the

3

Gulf Breeze Police Department. After their arrival at the police station approximately fifteen minutes later, Festa was administered a breathalyzer test which registered a blood-alcohol level of .034. A second test was administered three minutes later, with a measurement of .033. In deposition testimony, Burgett related to Festa what happened after these tests were concluded:

> Burgett: The procedure is that if a low sample of your breath is provided, we're required also to ask you for urine for the possible detection of any kind of narcotic substances or anything like that that might also affect your driving in conjunction with the alcohol. At that time, I believe we had a conversation and I told you I would tell you inside the vehicle because I told you that I would take care of this.
>
> . . .
>
> Festa: And when you told me what my breath tests were, which was .033 and .034, when we were in the car, I think, and you can correct me if I'm wrong, that I asked you, So now am I getting a ride home or something? And what was your answer to me?
>
> Burgett: I believe at that time I explained to you the procedures that I just talked about, about asking for urine. Unfortunately, I couldn't just let you go. You were under arrest for DUI. But at that point the conversations that we had previously to you taking the Breathalyzer, I sympathized with your situation and, like I explained to you in the vehicle, I believe, that I was going to take care of this DUI.
>
> Festa: Okay. And what do you mean by "take care of?"
>
> Burgett: Basically, once you were arrested for DUI, I made a determination from the conversations that we had between there and the jail that I was going to have this pled down to a reckless driving and

then the reckless driving to a nol pros [sic] so you would suffer no monitory [sic] damages or a record.

Doc. 57, Burgett Deposition at 24-25.

Festa was then transported to the jail where no urine test or other such testing were administered. Festa was detained at the jail for eight hours before he was released. After his release, a charge of reckless driving was added to the DUI charge, and on April 14, 2005, five days after the incident, Festa pled not guilty to both. At a hearing on March 20, 2006, the State dropped the DUI charge, and the reckless driving charged was dismissed by the court on Festa's motion.

Thereafter, Festa filed this lawsuit in federal district court, claiming, among other things, violations of his Fourth Amendment rights against unreasonable seizure and deprivation of liberty, based upon his alleged detention without probable cause. Defendants moved for summary judgment on grounds of qualified immunity, and the district court denied the motion. Defendants filed an interlocutory appeal of the district court's order denying them qualified immunity.

We have interlocutory appellate jurisdiction under 28 U.S.C. § 1291 "over legal issues that are the basis for a denial of summary judgment on qualified immunity grounds." Cottrell v. Caldwell, 85 F.3d 1480, 1484 (11th Cir. 1996); accord Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) (same). This includes the

5

district court's determination in this case that Deputies Teichner and Burgett were not entitled to qualified immunity because their actions violated Festa's clearly-established right to be free from unreasonable searches and seizures. Crenshaw v. Lister, 556 F.3d 1283, 1288-89 (11th Cir. 2009).

"[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Oliver v. Fiorino, 586 F.3d 898, 904 (11th Cir. 2009) (quotation omitted). "The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citations and quotations omitted).

Because it is undisputed that Defendants were acting within their discretionary authority, the burden shifts to Festa to show that qualified immunity should not apply. Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009), cert. denied, 130 S. Ct. 1503 (2010). "In analyzing the applicability of qualified immunity, the Court has at its disposal a two-step process. Traditionally, a court first determines whether the officer's conduct amounted to a constitutional violation. Second, the court analyzes whether the right violated was clearly established at the time of the

6

violation." Id. (citations omitted). Under Pearson v. Callahan, 129 S.Ct. 808 (2009), however, courts are no longer required to conduct the qualified immunity analysis in this order; rather, we are "permitted to exercise [our] sound discretion" in deciding which prong of the inquiry to address first. Id. at 818.

In analyzing whether a right was clearly established, we consider whether pre-existing law at the time of the alleged acts provided fair warning to Defendants that their actions were unconstitutional. See Hope v. Pelzer, 536 U.S. 730, 741 (2002). If it would be clear to any reasonable officer in the same situation that his actions were unconstitutional, then qualified immunity is not available, but if "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). The Supreme Court has declared that the test of "clearly established" law cannot apply at a high level of generality; instead, to deny qualified immunity, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Moreover, in applying the "clearly established" test, we turn to the precedent of the United States Supreme Court, the precedent of this Court, and to the highest court of the relevant state in interpreting and applying the law in similar circumstances. See Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 827 n.4 (11th Cir. 1997) ("In this

7

circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.").

On the record before us, we begin and end our analysis with the second question -- whether the unconstitutionality of Defendants' actions was clearly established at the time of the incident. We hold that it was not.

The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause. See Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir.1990). Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (internal marks and citations omitted). Furthermore, "a policeman's on-the-scene assessment of probable cause" not only "provides legal justification for arresting a person suspected of crime," but also provides justification "for a brief period of detention to take the administrative steps incident to arrest." Id. at 113-14.

It is well established in our circuit that when there is "arguable probable cause for an arrest," "[q]ualified immunity applies" "even if actual probable cause did not exist." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). Arguable probable cause exists if, under all of the facts and circumstances, an officer

8

reasonably could -- not necessarily would -- have believed that probable cause was present.  Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003).

Florida Statute § 316.1934 provides that if a person registers, "at th[e] time"of a breathylzer test, a "breath-alcohol level of 0.05 or less, it is presumed that the person was not under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired."  Fla. Stat. § 316.1934(2)(a).  Florida Statute § 316.1934 further provides that "[t]he presumptions provided in this subsection do not limit the introduction of any other competent evidence bearing upon the question of whether the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired."  Id. § 316.1934(2).

In the instant case, the parties, and the district court, agree that probable cause existed at the time of Festa's arrest.  The only issue, therefore, is whether Defendants should have immediately released Festa after the results of the breathalyzer test were learned.   But nothing in the Florida statute requires that an arrestee be immediately released upon registering a breath-alcohol level of 0.05 or less.[2]  As the district court

---

[2] To the contrary, the Florida statute provides that:

A person who is arrested for a violation of this section may not be released from custody:

> (a) Until the person is no longer under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893 and affected to the extent

recognized, the statute does not create an irrebuttable presumption; and contrary to the district court's suggestion, Defendants did present evidence -- including evidence of a 911 call, and Deputy Burgett's own observations of Festa's driving and of a moderate odor of alcohol -- bearing on whether Festa was driving under the influence of alcohol to the extent that his normal faculties were impaired.

Moreover, no decision from the United States Supreme Court, this Court, nor the Florida Supreme Court has clearly established that continued detention after an arrestee registers a breath-alcohol level of 0.05 or less is unconstitutional. Indeed, neither the United States Supreme Court, this Court, nor the Florida Supreme Court has established within what time frame nor under what circumstances an officer has an affirmative duty to release an arrestee. We therefore cannot conclude that Deputies Teichner and Burgett had fair warning that their continued detention of Festa was unconstitutional.[3] Accordingly, we reverse the district court's denial of

---

that his or her normal faculties are impaired;

(b) Until the person's blood-alcohol level or breath-alcohol level is less than 0.05; or

(c) Until 8 hours have elapsed from the time the person was arrested.

Fla. Stat. § 316.193(9). So while Festa "may not" have been released until he registered a breath-alcohol level of less than 0.05, the statute does not <u>require</u> that he be released at that time.

[3] Notably, the district court's decision -- which relies on out-of-circuit and out-of-state case law -- does not appear to include a discussion of how Defendants' conduct violated the

qualified immunity protection, and remand for further proceedings consistent with that reversal.

**REVERSED AND REMANDED.**

---

clearly-established prong of the qualified immunity inquiry.