[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10521
Non-Argument Calendar

_____

D.C. Docket No. 5:16-cv-00019-RH-GRJ

BRENDA HAMILTON,
JAMES HAMILTON,
DENNIS LARAMORE,

Plaintiffs-Appellants,

versus

LOUIS ROBERTS, III,
In his official capacity as Sheriff,
Jackson County, Florida,
STEPHEN SMITH,
In his individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(October 11, 2017)

Before MARCUS, WILLIAM PRYOR and BLACK, Circuit Judges:

PER CURIAM:

Appellants Brenda Hamilton, James Hamilton,[1] and Dennis Laramore appeal the district court's grant of summary judgment to Appellees Louis Roberts III, in his official capacity as Sheriff of Jackson County, Florida, and Deputy Stephen Smith, in his individual capacity, in Appellants' claims arising under 42 U.S.C. § 1983 and state law. Appellants assert the district court erred in (1) granting qualified immunity to Deputy Smith on the Hamiltons' excessive force claims, and (2) granting qualified immunity to Deputy Smith on Laramore's unlawful search and seizure claim. After review,[2] we affirm the district court.

## I.  BACKGROUND

Deputy Smith and Deputy Corey Finch responded to a 911 call that gunshots were heard on Ms. Hamilton's rural property and a dog may have been shot. Upon their arrival at the property, Deputy Smith and Deputy Finch encountered two men standing near a vehicle, Mr. Hamilton and a neighbor. Deputy Smith told the men to place their hands in the air, and asked them what they were doing, and whether they had a gun. The neighbor raised his hands and advised he had a gun.

Hamilton initially raised his hands but then lowered them. Deputy Smith again ordered Hamilton to raise his hands but Mr. Hamilton shouted that "[he]

---

[1] James Hamilton is Brenda Hamilton's father.

[2] We review the district court's grant of summary judgment de novo. *K.A. ex rel. F.A. v. Fulton Cty. Sch. Dist.*, 741 F.3d 1195, 1210 (11th Cir. 2013).

2

own[ed] this land and you sons of bitches are trespassing." Mr. Hamilton then started advancing toward the deputies who backed up until they were behind one of the patrol cars. The deputies repeatedly told Mr. Hamilton to stop and to keep his hands up or they would shoot. Mr. Hamilton kept walking toward the deputies, insisting they were on his land and did not have a right to be there, until he too got behind the patrol car with the deputies. At this point, Deputy Smith handcuffed Mr. Hamilton. Deputy Smith then retrieved the neighbor's loaded firearm from his waistband and a loaded revolver from the seat of the vehicle against which the men had been leaning.

After Mr. Hamilton was handcuffed, Ms. Hamilton arrived at the property. She got out of the car holding a bottle of Bud Light in her left hand and a Smith and Wesson .38 Special in her right hand. She walked quickly toward the deputies and her father asking what the deputies were doing to him. As she was approaching her father and the deputies, Deputy Smith drew his firearm and told her he was going to shoot her and ordered her to drop the gun. Ms. Hamilton stopped advancing but refused to drop the gun. After Deputy Smith again ordered her to drop the gun, Ms. Hamilton finally dropped the gun at her feet. At that time, Deputy Smith slung Mr. Hamilton into the hood of the car and moved to subdue Ms. Hamilton. Simultaneously, Ms. Hamilton dropped to the ground. Deputy Smith stuck his knee in Ms. Hamilton's back, handcuffed her, "snatched [her] up

3

. . . and shoved [her] in [a patrol car]." Deputy Finch retrieved Ms. Hamilton's weapon and secured it in his vehicle.

Shortly thereafter, Dennis Laramore arrived in his truck and parked 50 yards away from the patrol cars. Laramore got out of his truck and walked toward the patrol cars when Sergeant Bruce Ward (who had arrived to assist with the investigation) told Laramore to "[s]top right there." Laramore stopped, put his hands up, and stated, "I'm the one that called." Ward sarcastically remarked, "[i]s that supposed to mean something to me?" Thereafter, Laramore and Sergeant Ward exchanged words, with Laramore telling Sergeant Ward to talk to him like a human or arrest him or "I'm just going to whip your ass."

Sergeant Ward asked Laramore if he had any firearms in his truck and Laramore responded he had two, but told Ward not to touch them unless he had a search warrant. Deputy Smith retrieved one .22 caliber rifle and secured it in his patrol car. Smith missed the .22 pistol in the seat. When Ward advised he was going to handcuff him, Laramore said "[y]ou do it, make your arrest, because your ass is mine then." Laramore was handcuffed and placed in a patrol car.

The Hamiltons and Laramore were released from custody with no charges filed. The officers searched the area and found Ms. Hamilton's dogs uninjured, and found no evidence of anyone having been on Ms. Hamilton's property. The deputies returned the neighbor's two guns at the scene. Suspecting that Ms.

4

Hamilton and Laramore had been drinking, the deputies retained their guns and placed them in evidence at the Jackson County Sheriff's Office.  Ms. Hamilton and Laramore were given property receipts for the weapons, which they retrieved from the Sheriff's Office the following day.

## II.  DISCUSSION

Qualified immunity protects governmental actors performing discretionary duties from civil liability unless their conduct violates a clearly established constitutional or statutory right.  *Crenshaw v. Lister*, 556 F.3d 1283, 1289 (11th Cir. 2009).   "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (quotations omitted).  In this case, it is not disputed that Deputy Smith was performing discretionary duties when responding to a report of shots fired at Ms. Hamilton's property.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  In evaluating whether the plaintiff has met his burden, we ask "whether taken in the light most favorable to the party asserting the injury, do the facts alleged show that Defendants' conduct violated a constitutional or statutory right?  If so, the second question is whether the right, be it constitutional or statutory, was clearly

established." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quotation, internal citation, and alterations omitted).

## A.  Hamiltons' Excessive Force Claims

The Hamiltons assert the district court erred in granting qualified immunity to Deputy Smith on their excessive force claims.  In an excessive force case, whether a constitutional violation occurred is governed by the Fourth Amendment's "objective reasonableness" standard.  *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).  Our cases identify several factors instructive in determining whether an officer's use of force was objectively reasonable, including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically."  *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (quotations omitted).

The district court found the facts, for summary judgment purposes as follows:

> The officers responded to a report of shots fired.  Before they could sort out the situation, they were met with armed individuals, including two who resisted the officers' lawful commands.  The two were verbally belligerent.  One carried a handgun and refused, at least for a time, to put it down.  The officers detained the individuals who resisted their lawful commands, using force of a kind that ordinarily attends an arrest.

6

The district court concluded Deputy Smith did not use constitutionally excessive force, and even if the force was excessive, Deputy Smith was entitled to qualified immunity because his conduct did not violate clearly established law.  After thorough review, we agree and affirm the district court.

First, the Hamiltons have cited no case, nor have we found a case, that addresses facts similar to the ones in this case.  Second, the use of force in this case was objectively reasonable.  It was not unconstitutional for Deputy Smith to shove Mr. Hamilton aside so he could deal with Ms. Hamilton, who was refusing to drop her gun while approaching an officer.  It was also not unconstitutional for Deputy Smith to take control of Ms. Hamilton, who had shown a willingness to hold onto her gun when told to drop it.  The force used on the Hamiltons was reasonable under the circumstances.

### B.  Laramore's Search and Seizure Claim

Laramore asserts the district court erred in granting qualified immunity to Deputy Smith on his search and seizure claim.  Officers conducting a short investigative detention may take such steps as are reasonably necessary to protect their personal safety.  *See United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001).

The district court found the following:

Here the officers were dealing with armed and unruly individuals following a report of shots fired.  It was dark; individuals continued to

7

arrive; the officers were outnumbered and could not know if more individuals would be arriving; the situation was in flux. The officers understandably wished to control the guns at the scene.

The district court concluded there was no clearly established law governing a situation in which an officer enters an unlocked vehicle to seize guns while the guns' owner is nearby. And in any case, the officer could reasonably believe it necessary to enter the truck and seize any guns to protect the officers and the public. We agree that there was neither a constitutional violation nor any clearly established law governing this situation, and affirm the district court's grant of qualified immunity to Deputy Smith.

## III.  CONCLUSION

We affirm the district court's grant of summary judgment.[3]

**AFFIRMED.**

---

[3] Appellants' other arguments require little discussion. Their appeal of the district court's grant of summary judgment to the Sheriff fails. As there was no constitutional deprivation shown, they could show no custom or policy of the Jackson County Sheriff's Office allowing for such deprivation.

Appellants also appeal the district court's grant of summary judgment on their state law assault and battery claims. Their arguments are meritless.