[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11816

Non-Argument Calendar

_____

TIDERA HARRIS,

Plaintiff-Appellee,

*versus*

THE CITY OF MONTGOMERY,

Defendant,

GREGORY HARVEY,
In his individual capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:21-cv-00799-WKW-SMD

_____

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

This case arises from an ill-fated series of events that began with a domestic violence report and ended with Tidera Harris being shot by an officer of the Montgomery Police Department. Though Harris's injuries are unfortunate, the record shows that the officer did not use constitutionally excessive force. The district court therefore erred when it denied qualified immunity because the evidence in the record established that Harris's Fourth Amendment rights were not violated in this encounter.

**I.**

The events leading to this appeal began when Chimeka Minefield, the fiancé of Tidera Harris and mother of several of his children, snuck out of her own home to seek her neighbor's assistance in calling the police. Minefield was scared because Harris was, as she said, "acting up"—throwing furniture and "acting crazy." Though her neighbor warned her not to go back, Minefield could not stand to leave her children alone in the house with Harris, so she returned home. Minefield's neighbor informed the 911 operator that Harris had several warrants against him, that he had

been beating Minefield, and that she did not know if Harris had a weapon. The neighbor was so concerned about Minefield's wellbeing that she called back two more times, concerned that the police were taking too long to arrive.

As a result of these calls, Officer Gregory Harvey was dispatched to Minefield's home, along with Officer Helton as backup. From the dispatch, Harvey knew that this was a domestic violence call, which raised a sense of urgency and the possibility of a physical altercation. Harvey was also told that there were warrants out against Harris. Upon arrival, Harvey could hear a verbal altercation inside the home, so he entered the residence without knocking to intervene before things escalated.

Minefield invited Harvey further into the home, telling him that Harvey needed to "get him"—referring to Harris. Attempting to de-escalate the situation, Harvey asked Harris to step outside with him. But despite Harvey's repeated commands, Harris refused to follow orders. Instead, Harris began rummaging through the dimly lit house, requiring Harvey to utilize his flashlight so that the officers could see Harris's hands and actions. Harris continued to pat his pockets, walk around the house, and dig through clothing and furniture. He also kept acting as though he was receiving phone calls—lifting the phone to his ear and walking away from the officers—but they did not hear the phone ring, vibrate, or otherwise indicate that he was receiving any calls. Officer Harvey was concerned that Harris might have been looking for a weapon.

Finally, Harris stepped outside. He willingly gave Harvey his name and date of birth. Meanwhile, though, Harris kept glancing toward the Dodge Charger with dark tinted windows that was parked in the driveway. Harris then picked up his phone again as if to answer an imaginary phone call. He began walking toward the vehicle, and once he was around to the driver's side, Harris abruptly took off in a sprint toward the driver's door. Harvey gave chase and shouted "No." Upon rounding the back of the vehicle, he saw Harris reaching into the car and could not see his hands. Fearing that Harris was reaching for a weapon and forced to make a split-second decision, Harvey fired three shots. One bullet struck Harris's shoulder and one hit him in the back. An outside investigation by the State Bureau of Investigations determined that Harvey's actions were a reasonable exercise of his official duties under the totality of the circumstances.

Harris's operative complaint sets out four claims for relief: (1) assault and battery under Alabama state law against Harvey; (2) § 1983 excessive force in violation of the Fourth Amendment against Harvey; (3) *Monell* liability against the City of Montgomery and the Montgomery Police Department; and (4) Negligence and/or Wantonness under Alabama state law against Harvey. The defendants moved for summary judgment on all counts. As relevant to this appeal, Harvey argued that he was entitled to summary judgment because he was entitled to immunity—qualified immunity for the Fourth Amendment claims, and state agent immunity for the state law claims. After argument, the district court granted the motion with respect to the *Monell* claim

against the City but denied summary judgment to Harvey on all the claims against him.  This appeal followed.

## II.

This court reviews the grant of summary judgment based on qualified immunity de novo.  *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022).  Under this standard, we construe all facts and draw all inferences in the light most favorable to the nonmoving party. *Id.*

## III.

To demonstrate that qualified immunity does not apply in this case, Harris must show that Harvey (1) violated one of his constitutional rights, and (2) that it was clearly established at the time of the conduct that Harvey's specific actions did so.  *Id.* Because "an objectively reasonable officer in the same situation could have believed the use of force was not excessive," Harris failed to show that Harvey violated a constitutional right and Harvey is therefore entitled to qualified immunity.  *Brown v. City of Huntsville, Alabama*, 608 F.3d 724, 738 (11th Cir. 2010).

The Fourth Amendment's protection against unreasonable searches and seizures includes the right to be free from the excessive use of force.  *See Graham v. Connor*, 490 U.S. 386, 394 (1989).  To determine whether a use of force was "reasonable," courts must engage in a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotation omitted).  This is an objective inquiry:

"the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397. Critically, however, this inquiry must be judged from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and allow for consideration of the fact that officers must often make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396–97.

For better or for worse, this test is fact specific, and requires courts to "slosh our way through the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). There are, however, several factors that can help guide the analysis. These include (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (quoting *Graham*, 490 U.S. at 396).

*First*, Harvey had been discharged to Minefield's home on a domestic violence call and warned that Harris had warrants outstanding—these are some of the most dangerous calls for officers. *Second*, though Harris did not pose an immediate threat when the officers arrived at the scene, his progressive noncompliance and dash to the vehicle—a common place to store weapons—created a threatening situation in which both officers feared for their lives. His sudden, unprovoked movement, coupled with the pattern of evasive behavior, could alert an objectively

23-11816                Opinion of the Court                7

reasonable officer of an imminent threat to his safety and the safety of the others standing nearby. *See Oakes v. Anderson*, 494 F. App'x 35 (11th Cir. 2012) (unpublished). *Third*, Harris repeatedly and blatantly ignored Harvey's commands and resisted Harvey's efforts to de-escalate and investigate the alleged domestic violence incident.

Under these circumstances, the balance of the evidence shows that a reasonable officer at the scene could have found that shooting Harris as he reached in the car was not an excessive use of force. Accordingly, Officer Harvey is entitled to qualified immunity for his § 1983 claim.

That means Harvey is also entitled to state agent immunity on Harris's state law claims. "The Alabama Supreme Court has largely equated qualified immunity with state agent immunity." *Cantu v. City of Dothan, Alabama*, 974 F.3d 1217, 1236 (11th Cir. 2020) (quotation omitted) (alteration adopted). Thus, for the same reasons that Harvey is entitled to qualified immunity on the § 1983 claim, he is also entitled to state agent immunity on the state law claims.

★   ★   ★

It is regrettable when a person is shot and hindsight shows that it could have been avoided. But "tragedy does not equate with unreasonableness." *Powell*, 25 F.4th at 925 (quotation omitted). Because Officer Harvey's use of force was not objectively unreasonable under the circumstances of this case, there was no Fourth Amendment violation. The district court's decision

8                    Opinion of the Court                    23-11816

denying qualified and state agent immunity is therefore **REVERSED**.