Christopher Byron WHITE, Plaintiff,

v.

CITY OF LAGRANGE, GEORGIA, et al., Defendants.

Civil Action No. 3:12–cv–54–TCB.

United States District Court, N.D. Georgia, Newnan Division.

July 3, 2013.

Graylin C. Ward, Ward Law Office, Newnan, GA, for Plaintiff.

Jeffrey Marshall Todd, Lewis Taylor & Todd, P.C., Lagrange, GA, for Defendants.

### *ORDER*

TIMOTHY C. BATTEN, SR., District Judge.

This case comes before the Court on Defendants' motion for summary judgment [14].

## I. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.CIV.P. 56(a). There is a "genuine" dis-

pute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir.1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must " 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir.1995) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548).

## II. Background

During the early morning hours of October 17, 2010, Troup County E911 received a call from a woman who claimed that a man named Chris had held her friend hostage and was currently walking down Troup Street towards Brownwood Avenue. Dispatch relayed the information, and Defendant Officer Josh Clower responded to the call.

When Clower reached Brownwood Avenue, he saw Plaintiff Christopher Byron White walking on the sidewalk and initiated a stop. Clower instructed White to place his hands on the patrol car, and White initially complied, placing his hands on the hood of the car while standing directly in front of it. However, White lifted his hands on several occasions to gesture in response to Clower's questions, and Clower had to repeatedly instruct White to place his hands back on the vehicle. Moreover, as Clower attempted to walk around behind White, White repositioned himself around the side of the vehicle. Clower found this troubling because White was "refusing to give me his back," and Clower warned White that he could deploy his K–9 if necessary.

Clower followed White around the side of the vehicle and attempted to handcuff him, but White pushed back and started running.[1] Clower then deployed his K–9,

---

1. White claims in his affidavit that he fully complied with Clower's orders and ran only after Clower deployed the K–9. However, this version of the facts is blatantly contradicted by the video from Clower's patrol car as well as White's own statements after the arrest. Therefore, the Court need not consider it for purposes of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) ("When opposing parties

which caught up with White and bit him on the arm. While White struggled with the K–9, Clower caught up with them and began yelling at White to get on the ground and put his hands behind his back. White eventually complied, and with the K–9 still engaged, Clower got the handcuffs on him. At that point, Clower instructed White, "When I take this dog off, you do exactly what I tell you." Clower then conducted a pat-down search of White to ensure that he was not armed, radioed his status and location for backup, and removed the K–9. The entire pursuit lasted no longer than two minutes, and the K–9 was engaged with White no longer than one minute forty-five seconds.

Shortly after his arrest, White engaged in a conversation with Clower during which he can be heard to say, "I respect you and your dog, man. I just want a tetanus shot. I ain't got anything to say about neither one of y'all. I ran, the dog caught me, and God damn, you know...."

Approximately fifteen minutes after the arrest, Clower's supervisor, Sergeant Marshall McCoy, interviewed White with regard to the force used for the arrest, during which the following exchange took place:

McCoy: "Tell me what happened. Just with the dog bite. How'd that transpire?"
White: "I was in the wrong."
McCoy: "Did he warn you about the dog?"
Plaintiff: "Yeah, I was in the wrong ... I was in the wrong ... He warned me two, three times."
McCoy: "Do you have any complaints or anything?"

Plaintiff: "I can't complain ... I was in the wrong."

Shortly thereafter, paramedics arrived on the scene and attended to White's injuries. White walked to the ambulance under his own power.

## III. Discussion

White's complaint purports to bring claims under the First, Fourth, Fifth, Eighth and Fourteenth Amendments, as well as various state-law claims. In addition to Clower, he sues the City of Lagrange and its police chief, Louis M. Dekmar. However, in response to Defendants' motion for summary judgment, he has presented no evidence or argument in support of any of his claims other than his claim of excessive force against Clower under the Fourth Amendment. Thus, he has abandoned his state-law claims and his other constitutional claims, as well as his claims against the other named Defendants. *See Hudson v. Norfolk S. Ry. Co.,* 209 F.Supp.2d 1301, 1324 (N.D.Ga.2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."). Therefore, the Court will address only White's claim against Clower under the Fourth Amendment for excessive force.

A claim that a law enforcement officer has used excessive force in the course of an arrest must be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Determining whether the force used was reasonable under the

tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment."). Moreover, White has failed to respond to Defendants' statement of material facts. Therefore, Defendants facts are deemed admitted for purposes of this motion. LR 56.1B(2)(a), NDGa.

Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (internal quotation marks omitted).

The heart of the inquiry is "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Crenshaw v. Lister,* 556 F.3d 1283, 1290 (11th Cir.2009) (quoting *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir.2002)). Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Edwards v. Shanley,* 666 F.3d 1289, 1295 (11th Cir.2012) (alteration in original) (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865). "Because the reasonableness test is purely objective, in light of all facts and surrounding circumstances, the arresting officer's underlying intentions or motivations are ignored." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865.

The proper application of this standard "is not capable of precise definition or mechanical application." *Edwards,* 666 F.3d at 1295 (quoting *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Instead, it "requires careful attention to the facts and circumstances of each particular case," which is achieved by examining the so-called *Graham* factors, i.e., "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Edwards,* 666 F.3d at 1295 (internal citation and quotation marks omitted).

In addition to the above *Graham* factors, the Court should consider "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically." *Crenshaw,* 556 F.3d at 1290 (quoting *Hadley v. Gutierrez,* 526 F.3d 1324, 1329 (11th Cir.2008)). In considering these factors, the Court must keep in mind that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865.

In *Crenshaw,* the Eleventh Circuit applied these factors under similar circumstances. The plaintiff was suspected of committing armed robbery, and the defendants were the two sheriff's deputies who arrested him. The deputies initially pursued the plaintiff in his vehicle, but he crashed the vehicle and fled on foot into a wooded area. One of the deputies followed the plaintiff into the woods with a K–9. When he got close, the plaintiff got on the ground and shouted out his location in an attempt to surrender. However, the deputy released the K–9, which located the plaintiff and bit him thirty-one times on his legs. The deputy did not call off the K–9 until the plaintiff was handcuffed.

Because the plaintiff was suspected of armed robbery, because he actively fled from the police, and because the police had every reason to believe that he was armed and dangerous, the Eleventh Circuit found that all three of the *Graham* factors weighed heavily against the plaintiff. *Crenshaw,* 556 F.3d at 1292. Moreover, "[w]hile [the plaintiff] suffered serious injuries, these injuries were not the result of disproportionate or excessive force, but

were rather the result of objectively reasonable actions taken by [the deputy] to apprehend and secure what he reasonably believed to be an armed fugitive." *Id.* at 1293. Moreover, there was "no indication that [the deputy's] use of the canine involved greater force than necessary or was in any way 'malicious' or 'sadistic.'" *Id.* Thus, the other relevant factors also weighed against the plaintiff, and the court held that the "use of the canine was objectively reasonable under the circumstances and, therefore, did not violate [the plaintiff's] constitutional right to be free from excessive force." *Id.*

■ In this case, White makes similar allegations, and all of the relevant factors weigh overwhelmingly against him. He was suspected of the serious crime of felony kidnapping and was actively fleeing from Clower, creating a danger to the community. Therefore, all three of the *Graham* factors weigh against him.

Moreover, unlike the deputy in *Crenshaw*, Clower was alone. Thus, his need to use the K–9 to ensure his safety and the safety of the community was even greater. Also, his use of the K–9 was no more than necessary to ensure that White was secured. As the court observed in *Crenshaw*, "[the officer] would have been placing himself at risk had he called off the canine before ensuring that [the plaintiff] was fully secured." "This is true regardless of whether [the plaintiff] was actively resisting at that point, as [the officer] had no reason to trust that [the plaintiff] would not suddenly attempt to do him harm." *Id.*

In addition, White's injuries in this case were less severe than those of the plaintiff in *Crenshaw*, who was bitten thirty-one times. And as was the case with the deputy in *Crenshaw*, "there is no indication that [Clower's] use of the canine involved great-

er force than necessary or was in any way 'malicious' or 'sadistic.'" *Id.*

In sum, all of the relevant factors weigh against White. Therefore, there is no genuine dispute as to whether Clower's use of force was reasonable under the Fourth Amendment, and Clower is entitled to summary judgment on White's excessive-force claim.

■ Moreover, even if there were a genuine dispute as to whether Clower's use of the K–9 was reasonable, he would be entitled to summary judgment based on qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "To claim qualified immunity, a defendant must first show he was performing a discretionary function." *Barnes v. Zaccari*, 669 F.3d 1295, 1302–03 (11th Cir.2012). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir.2012) (quoting *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir.2009)). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 925 (11th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

■ It is undisputed that Clower was acting within the scope of his discretionary authority. Therefore, the burden is on White to show that Clower violated a clearly established constitutional right. "For the law to be 'clearly established,'

case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Priester,* 208 F.3d at 926. " '[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.' " *Id.* (quoting *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir.1997)).

██ "A narrow exception exists to the rule requiring particularized case law to establish clearly the law in excessive force cases." *Id.* "When an excessive force plaintiff shows 'that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw,' the official is not entitled to the defense of qualified immunity." *Id.* (quoting *Smith,* 127 F.3d at 1419).

White has failed to point to particularized case law showing that the right was clearly established. He has also failed to show that Clower's conduct so obviously violated the Fourth Amendment as to fit within the exception to the rule requiring particularized case law. Indeed, *Crenshaw* dictates just the opposite, i.e., that Clower's use of the K–9 was reasonable. Therefore, Clower is also entitled to summary judgment on White's claim against him based on qualified immunity.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [14] is GRANTED. The Clerk is DIRECTED to enter final judgment in favor of Defendants and to close the case.

IT IS SO ORDERED.