[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14393
_____

D.C. Docket No. 6:10-cv-00554-GKS-DAB

COLIN A. EDWARDS,

Plaintiff-Appellant,

versus

BRYAN C. SHANLEY,
JUSTIN E. LOVETT,
City of Orlando Police Officers,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 25, 2014)

Before HULL, MARCUS and HILL, Circuit Judges.

PER CURIAM:

Plaintiff Colin A. Edwards fled on foot from a police officer who had initiated a traffic stop of Edwards's vehicle. In the course of law enforcement's pursuit of Edwards, a police K-9 bit his leg. Edwards brought this 42 U.S.C. § 1983 lawsuit against Officers Bryan C. Shanley and Justin E. Lovett of the Orlando Police Department, alleging they used excessive force in apprehending Edwards. The district court conducted a two-day jury trial. After plaintiff Edwards presented his evidence, defendant Lovett moved for judgment as a matter of law, which the district court granted. The trial proceeded as to defendant Shanley, and the jury returned a verdict in favor of Shanley. After careful review and with the benefit of oral argument, we affirm the district court's entry of judgments in favor of both defendants.

## I.  FACTUAL BACKGROUND

### A.    Attempted Traffic Stop

Around 9:00 PM on December 17, 2008 in Orlando, Florida, Edwards was driving his wife's car, despite having a suspended license. A police car drove behind him and engaged its lights and siren. Lovett was driving the police car and believed that Edwards had failed to stop at a stop sign.[1]

---

[1]At trial, Edwards testified that he stopped at the stop sign.

2

Edwards realized that Lovett wanted him to stop, and thus, Edwards drove "a little bit down" the road and turned into a library parking lot. Once stopped, Edwards fled on foot. Lovett got out of his car and pursued Edwards on foot, yelling for him to stop. Edwards instead jumped over a six-foot fence, ran into a wooded area, and lay down on the ground.

Because Lovett had lost sight of Edwards, he called for back-up, and Shanley arrived on the scene with his partner, K-9 Rosco. Rosco was a Belgian-malamute and German-Shepherd mix, who responded only to German commands.

It is undisputed that Rosco tracked Edwards to his hiding place in the woods and, on Shanley's command, bit Edwards. The parties' evidence at trial conflicted as to the factual circumstances surrounding the dog bite.

## B.    Edwards's Account of the Dog Bite

According to Edwards, soon after he hid, he saw two officers with flashlights approaching where he lay, but did not know that a dog was accompanying them. When the officers' flashlights illuminated Edwards, he screamed that they "got [him]" and he "only ran because of [his] license." Rosco started to bite Edwards's left leg the moment he finished speaking.

Shanley and Lovett stood near Edwards, watching Rosco bite Edwards's leg. Edwards screamed to Shanley to "take the dog off," and Shanley told Edwards to "stop resisting; stop resisting." According to Edwards, though, he was not

3

resisting and even shouted to Shanley "I'm not resisting, . . . please take the dog off my leg." During the duration of the attack, Edwards did not attempt to kick Rosco. Rosco pulled Edwards's leg like it was "a rope."

According to Edwards, the attack lasted for five to seven minutes. After Edwards "played like [he] was passing out," Shanley handcuffed Edwards and told Rosco to release Edwards's leg.

Due to his injuries, Edwards was hospitalized for six days and had two surgeries on his leg, including a skin graft. Edwards was convicted of fleeing and eluding law enforcement and sentenced to two years' probation.

## C.    Shanley's Account of the Dog Bite

The jury heard a different version of events from defendants Shanley and Lovett. After arriving on the scene, Shanley and Lovett entered the woods with Rosco on a twelve-foot leash. Shanley twice shouted out that he was with a police dog who would bite Edwards if he did not come out with his hands in the air. Shanley spotted Edwards on the ground, with his hands tucked under his torso, and said "police K9, show me your hands." Edwards did not comply and so, when Rosco was eight feet from Edwards, Shanley dropped the twelve-foot leash and

4

gave Rosco the command to bite Edwards. At this time, Lovett was approximately ten feet behind Shanley.[2]

When Rosco bit Edwards, Shanley approached Edwards, verbally commanded Edwards to place his hands behind his back, and handcuffed Edwards. Shanley took the leash off of Rosco's harness, transferred the leash to the dog's collar, and gave the release command, ending the bite. According to Shanley, it took him between "15 and 20 seconds" to handcuff Edwards and have Rosco release the bite.

Shanley made the decision to have Rosco continue biting Edwards until he was handcuffed because he posed a possible threat, as he had fled from his vehicle, ran from an officer, jumped a fence, and hid in a wooded area. Further, during the bite, Edwards was struggling with Rosco and therefore actively avoiding arrest. Shanley believed that he was at an "extreme tactical disadvantage" and that there was a threat of ambush to him, his dog, and the other officer.

Lovett believed that Edwards punched Rosco during the attack. Shanley did not recall these details. Lovett estimated that the whole incident lasted "10 seconds, 15 seconds."

## II. PROCEDURAL HISTORY

---

[2]Lovett believed that Edwards was in a seated position and not laying on the ground at the time he was first bitten.

## A.    Edwards's Complaint and Summary Judgment Proceedings

In April 2010, Edwards filed this § 1983 lawsuit claiming, inter alia, that defendant Shanley used excessive force to secure Edwards's arrest and that defendant Lovett failed to intervene in Shanley's use of excessive force, all in violation of Edwards's Fourth Amendment rights.

In December 2010, Shanley and Lovett moved for summary judgment on qualified immunity grounds, and the district court granted their motions.

On appeal, this Court reversed, determining that neither officer was entitled to qualified immunity.  Edwards v. Shanley, 666 F.3d 1289, 1298 (11th Cir. 2012). Taking Edwards's account of the incident as true, Shanley had subjected Edwards "to five to seven minutes of dog attack, while Edwards was pleading to surrender and Shanley was in a position to immediately effect Edwards's arrest."[3]  Id. at 1296.  And, Lovett made no effort to intervene and stop the ongoing dog attack. Id. at 1298.   This Court concluded that, accepting Edwards's account as true, the officers' actions violated clearly established federal law.  Id. at 1298.

This Court pointed out, however, that Shanley did not violate clearly established federal law by using the dog to track Edwards and instructing the dog to bite Edwards for the purpose of subduing him, as Edwards had fled into the

---

[3]This Court accepted as true Edwards's version of events, but stressed that a jury would be free to make its own fact findings.  Edwards, 666 F.3d at 1295 & n.3.

woods at night and the officers did not yet know the extent of the danger Edwards posed. Id. at 1295.[4] Nevertheless, accepting as true Edwards's version of events, the Court concluded that Shanley did unreasonably delay securing Edwards. Id. at 1298. Thus, this Court remanded to the district court for further proceedings. Id.

## B.    Edwards's Dog Bite Expert Ron Berman

On remand, the district court scheduled the case for trial. Edwards disclosed the expert report of Ron Berman, a specialist in canine and feline behavior and in dog-bite wound evaluation and a forensic consultant certified by the American College of Forensic Examiners International.

In the expert report, Berman opined that Edwards's wounds were consistent with numerous dog bites to his leg and were the result of a "prolonged attack." Before rendering his opinion, Berman reviewed numerous photographs of Edwards's injuries, police incident reports, medical reports, and records about K-9 Rosco and defendant Shanley. Nevertheless, Berman did not review Rosco's training records and did not know his breed.

## C.    Defendants' Motion in Limine

---

[4]Indeed, in Crenshaw v. Lister, this Court held that a K-9 officer did not violate clearly established constitutional law when he (1) believed that a fleeing suspect was armed and dangerous, (2) allowed his K-9 to attack the suspect to apprehend him, and (3) did not "call off" the K-9 until the suspect was handcuffed. 556 F.3d 1283, 1292-93 (11th Cir. 2009). We held that it was irrelevant to our determination as to whether the suspect "was actively resisting arrest" during the attack, as the officer had "no reason to trust that [the suspect] would not suddenly attempt to do him harm." Id. at 1293.

Defendants Shanley and Lovett moved to exclude the expert opinion of Berman under Rule 702 of the Federal Rules of Evidence. The officers argued, inter alia, that the proffered expert opinion was not methodologically reliable and would not assist the trier of fact.

The defendants attached Berman's deposition to their motion. Berman testified that he had read over 500 studies on dog bite wounds and dog attacks and reviewed over 6,000 photographs of bite wounds related to attacks that he had investigated over the course of his 34-year career. Berman did not indicate how much of his experience concerned bites inflicted by police canines in particular, other than to state that he had worked on only four excessive-force cases involving police canines. Berman testified, however, that, because a police dog "deliver[s] a more serious bite" than an average dog, bites by police dogs should not always be compared to bites by average dogs.

Berman testified that Edwards was bitten at least four to seven times, possibly even more. Berman could not provide an "accurate time" as to the length of the "prolonged" attack, but could "say with a fair degree of certainty that [Edwards's attack] was not of a short duration." He testified, "This did not happen in 60 seconds. It probably didn't happen in 90 seconds. I can't say exactly how long the dog was biting him, but it was certainly not a short duration." The following exchange then occurred:

8

[Defense Counsel]: How can you accurately say how much time expired for the attack to take him? . . . .

[Berman]: But I'm not saying how much time. I think it –

[Defense Counsel]: Well you just said it took at least 60 seconds, probably 90 seconds, I'm wondering how you can actually arrive at that number.

[Berman]: Because there's so many bite wounds that it was – basically, my opinion is what I said in my report. It was a prolonged attack. I can't tell you –

[Defense Counsel]: Is it fair to say you can't say whether it was 60 seconds or 90 seconds?

[Berman]: I can't say exactly. No absolutely not. I can't tell you how long that attack was. I cannot. I can just tell you it was not short duration [sic], it was prolonged, because there was [sic] so many bite wounds and so much damage done to pretty much every part of his legs.

The defense later asked Berman again whether he could give a "time frame" as to what constituted "prolonged." Berman responded that he could not "give a specific number, because truthfully I can't."

Berman opined that police dogs do not typically bite quickly "from what [he] had] seen," and thus, the attack likely was not of short duration. Berman explained that police dogs typically "bite and hold . . . on to [an arm or a leg] as long as they can." Berman later suggested, however, that Rosco was not "biting and holding" in Edwards's case because Edwards's injuries were so extensive.

**D.    District Court Order Granting Defendants' Motion in Limine**

9

The district court granted the defendants' motion in limine. The court determined that Berman's opinion was inadmissible under Rule 702 because it would not assist the trier of fact in understanding the evidence or determining any fact at issue. Berman's opinion that Edwards suffered a prolonged attack by Rosco was "no more than a characterization" and "stated too vaguely to assist the jury in determining the duration of the encounter." The court found that Berman could not "opine more specifically or quantitatively as to how long the encounter between Edwards and Rosco lasted."

The district court also concluded that Berman's estimation of the length of the bite was inadmissible under Rule 403 of the Federal Rules of Evidence because (1) Edwards's testimony would "no doubt" characterize his encounter with Rosco as prolonged, (2) Berman's opinion would be duplicative of Edwards's testimony, and (3) "its miniscule probative value is outweighed by the interest [in] avoiding presentation of cumulative evidence."[5]

## E.    Edwards's Case-in-Chief

In March 2013, the district court held a two-day jury trial. Edwards's case-in-chief included his own testimony and the testimonies of his physician, Dr. Bhupinder Gupta, and Lovett and Shanley.

---

[5]The district court also excluded Berman's opinions that (1) it was unlikely that Edwards struck Rosco with his fist, as Lovett believed, and (2) Shanley had an opportunity to stop Rosco from biting Edwards. Edwards does not appeal the exclusion of this proposed testimony.

At the close of Edwards's case-in-chief, and outside of the presence of the jury, Lovett moved for judgment as a matter of law in his favor. He argued that he could not prevent the attack from occurring because he did not know Rosco's German commands, as he had testified.

The district court determined that Lovett had no ability to command Rosco and that the decision as to whether to call Rosco off of Edwards rested entirely with Shanley. The district court concluded that no reasonable jury could find that Lovett could have stopped the K-9 attack and granted judgment as a matter of law in favor of Lovett.

## F.    Shanley's Defense

Shanley's defense included the testimony of Dr. Charles Mesloh, who had worked as a K-9 handler for ten years, obtained his doctorate in public affairs, wrote his dissertation on police force cases involving K-9s, and reviewed hundreds of cases involving police K-9 bites.[6]

Dr. Mesloh testified that Edwards's leg sustained multiple bites and that the bites were "pretty severe." According to Dr. Mesloh, Edwards's injuries were so

---

[6]Prior to trial, Edwards filed a motion in limine seeking to exclude any testimony by Dr. Mesloh about the "Orlando Police Department's written policies and procedures regarding the use and deployment of police dogs and testimony about whether [Shanley and Lovett's] conduct was in conformity with those guidelines." Edwards did not seek to exclude testimony by Dr. Mesloh as to other issues. The district court denied Edwards's motion in limine.

11

severe because Edwards struggled.[7]  Severe injuries, like Edwards's, did not happen in normal K-9 dog bite cases, as K-9s typically "make contact, latch on, . . . bite and hang on to the person."  However, where a person struggled, he or she could break free of the dog's bite, possibly causing the skin to rip, and then the dog would re-attach, creating a new bite.

Dr. Mesloh testified that, if a K-9 bit a suspect for five to seven minutes, the suspect would have no chance of survival and would be dismembered.  Dr. Mesloh believed that Edwards's injuries were of "relatively short duration."  He stated, "I've seen a one minute police dog bite and it was horrific.  I saw it on an individual.  And that was considerably worse than this."  Although Edwards's injuries were severe, "[t]hey just weren't at the level of one minute dog bites" that Dr. Mesloh had previously seen.  Edwards did not object to Dr. Mesloh's testimony concerning the duration of the dog-bite attack.

Following the parties' closing arguments, the jury deliberated and rendered a verdict in favor of Shanley.

## G.    Motion for a New Trial

Edwards moved for a new trial, arguing, inter alia, that (1) the admission of Dr. Mesloh's expert testimony as to the nature of the dog bite injuries and the exclusion of Berman's expert testimony on this same issue resulted in an unfair

---

[7]Dr. Mesloh based his opinion that Edwards had struggled on his review of pictures of Edwards's leg.

trial and (2) the court erred in entering judgment as a matter of law in favor of Lovett.

The district court denied Edwards's motion for a new trial. Edwards timely appealed.

### III. DISCUSSION

### A.    Expert Testimony

We review for an abuse of discretion the district court's decisions regarding the admissibility of expert testimony. United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc). "Indeed, the 'deference that is the hallmark of abuse-of-discretion review' requires that we not reverse an evidentiary decision of a district court 'unless the ruling is manifestly erroneous.'" Id. (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142, 143, 118 S. Ct. 512, 517 (1997)) (citation and quotation marks omitted). Thus, "[w]e will not overturn an evidentiary ruling and order a new trial unless the objecting party has shown a substantial prejudicial effect from the ruling." Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1192 (11th Cir. 2011) (quotation marks omitted). Additionally, we may affirm the district court's judgment on any ground that finds support in the record. See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001).

To determine the admissibility of expert testimony under Rule 702, courts must engage in a rigorous three-part inquiry. Frazier, 387 F.3d at 1260 (citing

Daubert v. Merrell Pharm., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2794 (1993)).

Trial courts must consider whether:  "(1) the expert is qualified to testify

competently regarding the matters he intends to address; (2) the methodology by

which the expert reaches his conclusions is sufficiently reliable . . . ; and (3) the

testimony assists the trier of fact, through the application of scientific, technical, or

specialized expertise, to understand the evidence or to determine a fact in issue."

Id. (quotation marks omitted).

For a court to evaluate the second requirement—whether testimony is

sufficiently reliable—the "specific meaning" of the expert's opinion must not be

"impossible to discern."  Id. at 1265.  In United States v. Frazier, we upheld the

district court's exclusion of an expert's opinion—"that the recovery of inculpatory

hair or seminal fluid 'would be expected'" if the victim had been sexually

assaulted—where "the very meaning of his basic opinion [was] uncertain."  Id. at

1264-65 (noting that the expert did not specify whether the term "expect" meant it

was "more likely than not that trace evidence would be found, or that it was

substantially more likely than not that it would be found . . . ., or that discovery

was a virtual certainty").

Additionally, to satisfy the reliability requirement, an expert witness who

relies primarily on experience "must explain how that experience leads to the

conclusion reached, why that experience is a sufficient basis for the opinion, and

14

how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note (2000 amends.). To fulfill its gatekeeping function under Rule 702, a district court must not simply "'tak[e] the expert's word for it.'" Id. "If admissibility could be established merely by the ipse dixit of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." Frazier, 387 F.3d at 1261.

For testimony to satisfy the third requirement—assisting the trier of fact—the testimony must "concern[] matters that are beyond the understanding of the average lay person." Id. at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262-63. "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1111 (11th Cir. 2005); see Frazier, 387 F.3d at 1266 (finding no abuse of discretion when the trial court concluded that an "imprecise and unspecific" expert opinion would not assist the jury, and observing that the expert's "imprecise opinion easily could serve to confuse the jury, and might well have misled it").

"Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility

15

requirements may still be excluded by applying Rule 403." Frazier, 387 F.3d at 1263 (citation omitted). "Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming." Id. (citation omitted).

Exercising proper deference to the district court's Daubert analysis, we cannot say the trial court committed reversible error by excluding Berman's testimony. If admitted, Berman's opinion would have supported two of Edwards's assertions: (1) that Rosco bit Edwards multiple times, and (2) that Rosco bit Edwards for a "prolonged" period of time. The district court did not abuse its discretion by excluding Berman's testimony on either of these issues.

To begin with, the trial court did not manifestly err in barring Berman's testimony as to the number of dog bites inflicted on Edwards during the attack. In short, Berman's quantitative assessment would have been cumulative under Rule 403, and in any event, Edwards cannot show substantial prejudice as to its exclusion. Berman's proposed testimony was that Edwards was bitten four to seven times. But the jury already knew that fact from two other witnesses. Specifically, at trial, Dr. Gupta and the defendants' expert, Dr. Mesloh, both testified that Rosco bit Edwards multiple times. In particular, Dr. Gupta testified that Edwards sustained "multiple bite wounds" caused by "multiple dog bites" and

16

that his physical examination uncovered at least five wounds.  Dr. Mesloh similarly acknowledged the "multiple punctures and tears" resulting from the attack.  And the photographs introduced by Edwards showed multiple severe bite wounds separated by gaps.  The evidence was already overwhelming that Rosco bit Edwards at least five times.  Edwards is not entitled to reversal on this ground.

In the second place, the district court did not manifestly err by excluding Berman's testimony as to the "prolonged" duration of the attack.  For starters, the record at least arguably undermines the reliability of this opinion under the second prong of the Rule 702 inquiry.  See id. at 1260.  It is fairly debatable whether the meaning of Berman's opinion, like the thrust of the expert's opinion in Frazier, was indiscernible and uncertain.  After all, Berman failed to explain what he meant by the use of the term "prolonged," other than to concede, at one point in his deposition, that the "prolonged" attack lasted more than 60 seconds and "probably" more than 90 seconds.  See id. at 1265.  Notably, when asked to specify "what time frame prolonged is," Berman later stated, "I'm not going to give a specific number, because truthfully I can't."

Moreover, Berman largely failed to explain how his experience, when "reliably applied to the facts," led him to the conclusion that the attack on Edwards was prolonged.  Id. at 1261.  To the extent Berman did explain, he undermined his own conclusion.  Based on his experience, Berman first stated that police dogs do

17

not typically bite quickly, but rather bite and hold for "as long as they can." Because Edwards sustained many such bites from a police dog, Berman explained, the attack must have been prolonged. However, Berman later indicated that, although police dogs ordinarily "bite and hold," K-9 Rosco was not acting like a typical police dog when he attacked Edwards because Rosco was not "biting and holding." Thus, Berman later rejected the underlying factual premise drawn from his experience: that Rosco was acting in conformity with typical police dog behavior during the attack by "biting and holding."

Further still, based on his experience, Berman testified at a few moments into his deposition that a dog's training and breed partially determine its biting behavior. Nevertheless, Berman subsequently admitted that he was unfamiliar with Rosco's training and did not know his breed. Berman also suggested that he had reached his opinion—that the attack was prolonged—by comparing Edwards's injuries to other dog bite injuries he had reviewed. But Berman later made a series of remarks tending to undermine confidence in any such comparisons. Specifically, (1) Berman admitted that police dog bite cases should not always be compared to other dog bite cases, and (2) he testified that "every dog is an individual," such that "different dogs bite with different severity." Accordingly, because Berman was at best inconsistent in using his experience to illuminate the

18

duration of the attack, the district court could permissibly have excluded Berman's testimony as insufficiently reliable under Rule 702.

Nor do we find any manifest error in the trial court's determination that Berman's opinion was excludable under Rule 702's third prong.  In light of the inconsistencies in Berman's testimony, the district court did not abuse its discretion by concluding that Berman's opinion would not have assisted the trier of fact to understand the evidence or to determine a fact in issue.  See Cook, 402 F.3d at 1106-07, 1111.  At least arguably, Berman's opinion was too vague to assist the jury in determining the duration of the encounter, because—as the record shows and the district court emphasized—Berman was "unable to opine more specifically or quantitatively as to how long the encounter between Edwards and Rosco lasted."

Finally, Edwards argues that the district court abused its discretion by allowing Dr. Mesloh to testify as to the attack's duration while excluding Berman's testimony on the same topic.  Prior to trial, however, Edwards, did not file a motion in limine to exclude Dr. Mesloh's testimony on this issue.  And, at trial, Edwards did not object to that testimony.  Thus, Edwards has not preserved his right to appeal on this ground.  See Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1286 (11th Cir. 2000).

Even assuming that this issue was properly preserved by way of Edwards's motion for a new trial, we cannot say that the district court abused its discretion in

19

allowing Dr. Mesloh to testify as to the duration of the dog bite attack. As already discussed, the district court did not abuse its discretion in excluding Berman's expert testimony. Moreover, Dr. Mesloh, unlike Berman, (1) provided a factual foundation for his opinion that the dog bite was of short duration, lasting less than a minute, as Dr. Mesloh testified that Edwards's injuries were not as severe as those of individuals who had been subjected to a one-minute police dog bite, and (2) was precise about his estimation of the duration of the attack, stating that he believed it lasted less than one minute. Accordingly, the district court did not err by excluding Berman's testimony and allowing Dr. Mesloh's.

In any event, even if the district court erred in excluding Berman's testimony as to the duration of the attack, Edwards cannot demonstrate any substantial prejudicial effect from the ruling. To demonstrate substantial prejudice, a movant "bears the burden of proving that the error 'probably had a substantial influence on the jury's verdict.'" Proctor v. Fluor Enters., 494 F.3d 1337, 1352 (11th Cir. 2007). For a number of reasons, Edwards has not met this burden.

First, Edwards did not argue in his new trial motion that the exclusion of Berman's testimony caused substantial prejudice. Because Edwards failed even to raise this argument in the district court, when he had the burden to do so, he has waived the opportunity to argue substantial prejudice on appeal. See Access Now, Inc. v. S.W. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not

20

raised in the district court and raised for the first time in an appeal will not be considered by this court." (citation and quotation marks omitted)).

Second, even if Edwards had properly preserved the prejudice argument, we would be hard-pressed to conclude that the exclusion of Berman's testimony "probably had a substantial influence on the jury's verdict." Proctor, 494 F.3d at 1352 (quotation marks omitted).  Put simply, there is a lot of daylight between the upper bound of Berman's quantitative estimate (90 seconds) and the lower bound of Edwards's (five minutes).  Thus, at best, Berman's testimony would have left three-and-a-half minutes of Edwards's story unaccounted for.

Finally, even without hearing Berman's testimony, the jury considered at least three other pieces of evidence tending to suggest the dog bite was prolonged.  First, as we have seen, Edwards insisted during his own testimony that the bite lasted five to seven minutes.  Second, plaintiff's counsel entered into evidence several photographs of Edwards's grisly injuries, which at least arguably could have suggested a prolonged attack.  Most importantly, however, the jury heard Dr. Gupta's expert testimony.  Though Dr. Gupta did not quantify the duration of the dog bite, he observed that Edwards suffered "at least five wounds," which necessarily resulted from either "multiple dogs, or one dog biting multiple times."  Additionally, Gupta testified—for over an hour—as to the severity of Edwards's wounds.  Specifically, he explained: (1) that Edwards suffered a "very, very severe

21

injury" with "very extensive and complex wounds"; (2) that "some of the muscles [were] severely damaged in all of these wounds"; (3) that Edwards's "tissues [we]re just basically chewed up by the dog bites"; and (4) that—even within the category of dog bite wounds—the damage to Edwards's tissues was "one of the major injuries we see from dog bites." Thus, as Edwards conceded first in his opening brief and again at oral argument, the jury reasonably might have inferred a prolonged attack from Gupta's emphasis on the severity of Edwards's injury.

Though Berman's testimony undoubtedly would have aided Edwards's case, and though Berman was Edwards's only expert who planned to quantify the duration of the bite, Edwards has failed to show that the exclusion of Berman's testimony probably had a substantial influence on the jury's verdict. Accordingly, given the record as a whole, we cannot say that Edwards has shown the requisite prejudice to obtain a new trial based on the district court's evidentiary ruling as to Berman.

## B.    Judgment as a Matter of Law- Failure-to-Intervene Claim

Edwards argues that the district court erred in granting judgment as a matter of law in favor of defendant Lovett on Edwards's failure-to-intervene claim. However, assuming, arguendo, that the district court erred, the error is harmless. See Fed. R. Civ. P. 61. Because the jury found that Shanley did not use excessive force, Edwards's claim that Lovett failed to intervene in that use of excessive force

22

necessarily fails.  See Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009)

("[B]ecause [one officer] did not violate [a plaintiff's] right to be free from

excessive force, [the second officer] had no attendant obligation to intervene.");

Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000)

(providing that an officer can be liable for failing to intervene when another officer

uses excessive force).

Relying on the jury verdict form—on which the jury found that Shanley did

not "intentionally commit[] acts which violated the federal constitutional rights of

Plaintiff, Colin A. Edwards, not to be subject to excessive and unreasonable force

during an arrest"—Edwards argues that the jury could have decided that Shanley

used excessive force, but did not intentionally do so.  Edwards thus argues that the

failure-to-intervene claim against Lovett was not rendered harmless by the verdict

in favor of Shanley.  No trial evidence, however, supports a finding that Shanley's

actions were unintentional.  In fact, the undisputed evidence establishes that

Shanley intentionally ordered Rosco to bite Edwards, and the mens rea component

of § 1983 liability requires nothing more.  See Monroe v. Pape, 365 U.S. 167, 187,

81 S. Ct. 473, 484 (1961) (holding that liability under § 1983 and the Fourth

Amendment does not require "the doing of an act with 'a specific intent to deprive

a person of a federal right'"), overruled on other grounds by Monell v. Dep't of

Soc. Servs. of New York, 436 U.S. 658, 663, 98 S. Ct. 2018, 2022 (1978); Burrell

23

v. Bd. of Trs. of Ga. Military Coll., 970 F.2d 785, 793 (11th Cir. 1992) (noting that "a claim under section 1983 . . . does not need to assert a specific intent to deprive another of a federal right" (footnote omitted)).  Edwards also argues that the jury could have determined that Shanley violated Edwards's constitutional rights, but that the violation was not the proximate or legal cause of Edwards's damages.  However, the evidence adduced at trial would have required any reasonable jury to conclude that Rosco's bite proximately caused Edwards's injuries.  Thus, we do not interpret the jury verdict form as Edwards urges.[8]

Edwards argues that the claimed error in granting judgment as a matter of law in favor of Lovett may have caused the jury to rule in Shanley's favor.  In support, Edwards relies on Williams v. Slade, 431 F.2d 605 (5th Cir. 1970).[9]  Williams involved one claim against two defendants, either one of whom, or both of whom, could have been held liable as to that claim.  Id. at 606.  In that case, the district court granted a directed verdict in favor of one of the defendants, and the jury then rendered a verdict in favor of the remaining defendant.  Id. at 606, 608.

On appeal, this Court held that the district court erred in granting the directed verdict.  Id. at 608.  This Court determined that a retrial as to both

---

[8]Edwards cites Burger King Corp. v. Mason, 710 F.2d 1480, 1489 (11th Cir. 1983), which held that district courts must make all reasonable efforts to reconcile an inconsistent jury verdict.  Burger King is inapposite because this case does not involve inconsistent verdicts.

[9]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

24

defendants had to be held because the jury verdict in favor of the remaining defendant could have been infected by the directed-verdict error. Id. This Court determined that "the jury was deprived of the opportunity to adjudge the responsibility of both [defendants] together and was left with only an all or nothing choice as to [the remaining defendant]." Id. at 609.

Unlike Williams, the instant case involved two independent claims against two defendants. Edwards's excessive-force claim against Shanley did not rise or fall with whether Lovett was held liable on the failure-to-intervene claim. And, there was no risk of the jury being faced with the all or nothing choice described in Williams because only Shanley could be held liable for the excessive-force claim: not Lovett. Because Shanley's liability was not dependent on Lovett's liability, Edwards has not shown that the claimed error infected the jury verdict in favor of Shanley.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the judgments entered in favor of the defendants.

**AFFIRMED.**