**Glen Kirk MASSIE, Plaintiff,**

v.

**COBB COUNTY, GEORGIA, and Officer Brett Allen Gallimore, in his individual and official capacities, Defendants.**

**CIVIL ACTION FILE NUMBER 1:16–cv–499–TCB**

United States District Court, N.D. Georgia, Atlanta Division.

Signed June 01, 2017

 

David Russell Willingham, Willingham Law Firm, P.C., Marietta, GA, for Plaintiff.

Deborah L. Dance, Hugh William Rowling, Jr., Austin Daniel Roberson, Eddie Snelling, Jr., Marietta, GA, for Defendants.

## ORDER

Timothy C. Batten, Sr., United States District Judge

This case comes before the Court on Defendants' motion to dismiss or in the alternative for summary judgment [37], Defendants' motion for leave to file excess pages [49], and Plaintiff's motion to amend his complaint [41].

## I. Factual Background

On February 24, 2014, Plaintiff Glen Massie was arrested for driving under the influence of alcohol by Defendant Brett Gallimore and other officers of the Cobb County Police Department ("CCPD"). At approximately 8:30 that evening, CCPD received a noise complaint from the Stone Ridge apartment complex. The officers who responded included Gallimore, C.P. Watson, C. Henderson, Z. Stannard, and Alicia Chilton. While some of the officers were standing in the parking lot with their vehicles' dashboard cameras running, Massie approached them in his car, which had one disabled headlight, and asked what was happening. The officers suspected that Massie was intoxicated and asked him whether he had been drinking. Massie, whose speech was slurred, admitted to having had "a few beers," and later, "a lot of beers." When asked to quantify how much alcohol he had consumed, Massie responded, "Sir, I'm drunk."

The officers directed Massie to exit his car and attempted to give him a preliminary breath test, but Massie was not cooperative and would not blow into the breathalyzer device. At that point, the officers asked Massie to submit to field sobriety testing. When Massie responded that he didn't know what he should do, he was handcuffed and escorted to one of the nearby police vehicles, where he was patted down. Henderson advised Massie that he was being placed under arrest for driving under the influence.

As Henderson attempted to speak to Massie while Gallimore looked on, Massie turned away and began interrupting Henderson. Gallimore instructed Massie to "stop talking, let [Henderson] finish what he is saying," and "stop fucking interrupting." At that point, Massie became upset and said to Gallimore in a raised voice, "Man, did you just say 'fucking'? Man, I'm more professional than you!" When Henderson mentioned Massie's prior drug arrest, Massie again raised his voice and became visibly agitated, yelling to the officers that that was "twenty years ago!"

After Henderson finished explaining the arrest to Massie, Gallimore escorted Massie to the rear door of the patrol car. Although they moved out of sight of the vehicle's dashboard camera, the camera continued to record audio. Massie is heard asking, in a raised voice, why Gallimore was pushing him and then saying "go fuck yourself" to Gallimore. There are some muffled sounds that can be heard before Massie is heard groaning, calling Gallimore "a dick" and telling him to "fucking let go," to which Gallimore responded, "Stop resisting then." Moments later, Massie was secured in the back of the patrol vehicle.

Massie alleges that during the off-camera interaction with Gallimore, Gallimore—who is six feet, four inches tall and weighs approximately 280 pounds, whereas Massie is five feet, eleven inches tall and weighs 185 pounds—forcefully threw the handcuffed Massie to the ground and landed directly on top of him. According to Gallimore, Massie leaned back or pushed off of the car, causing both men to stumble, lose their balance, and fall to the ground.

Whether he was thrown or fell to the ground, it is undisputed that Massie suffered abrasions to his face, and as a result an ambulance was called to assess Massie's injuries. Massie did not complain to the paramedics about having been thrown to the ground. Once it was determined that Massie was not in acute distress, he was transported to the jail, which referred him to the local hospital for a precautionary evaluation. Massie complained of face and teeth pain and numbness, and medical staff at the hospital noted that Massie had swelling, bruising, and an abrasion on the right side of his face. Ultimately, it was determined that he suffered a head injury, cervical strain, and facial trauma.

Massie left the hospital at around 3:30 a.m. and was returned to the jail, where he was held until approximately 7:00 a.m. During that time, he did not request any medical assistance or complain about his injuries. After being released, Massie was in pain for two to three days but did not seek further medical treatment; instead, he tended to his head injury by applying a cold "bag of peas."

Based on these events, Massie brings claims against Gallimore and Cobb County for violations of his Eighth and Fourteenth Amendment rights. He also brings claims against Gallimore pursuant to article 1, section 1, paragraph 17 of the Georgia Constitution—which prohibits cruel and unusual punishment and abuse of persons being arrested or under arrest—as well as for assault and battery. Defendants have moved for dismissal or alternatively for summary judgment. In response, Massie moves for leave to amend his complaint.[1]

## II. Massie's Motion to Amend His Complaint

■ As just noted, Massie's complaint asserts claims under the Eighth and Fourteenth Amendments to the United States Constitution, but not the Fourth Amendment. Following the filing of Defendants' motion to dismiss, Massie moved to amend the complaint to assert a Fourth Amendment claim. Defendants oppose the motion as untimely and on the basis that amendment would be futile.

Massie's motion to amend his complaint is untimely, as it was filed after the deadline for amendments set forth in the scheduling order, and indeed, after the close of discovery and the filing of Defendants' motion to dismiss or for summary judgment. However, the amendment is not so late that it is barred by the statute of limitations, as Defendants suggest. Rule 15(c) of the Federal Rules of Civil Procedure provides that an amendment will relate back to the date of the original pleading if it "asserts a claim ... that arose out of the conduct, transaction, or occurrence set out ... in the original pleading." Plainly, that is the case here.

---

1. Massie's response brief correctly points out that Defendants' brief in support of their motion to dismiss or for summary judgment is ten pages longer than this Court's local rules permit. See LR 7.1(B), NDGa. Defendants subsequently filed an out-of-time motion to exceed page limits. That motion is unopposed and will be granted *nunc pro tunc* to October 26, 2016, the date upon which Defendants filed their motion to dismiss or for summary judgment.

Moreover, Defendants have fully analyzed the merits of Massie's claims under the Fourth Amendment, removing any risk of prejudice resulting from the belated amendment. The Eleventh Circuit has expressed "a strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014). The Court will therefore grant Massie's motion to amend and analyze the merits of his claims under the Fourth Amendment as well as the other provisions cited in the original complaint. However, the Court will not require Defendants to respond to the amended complaint.

### III. Defendants' Motion to Dismiss or for Summary Judgment

#### A. Legal Standard

Motions to dismiss and motions for summary judgment are governed by different legal standards. Because Defendants' motion was filed after the close of discovery and both parties have fully briefed the motion as one for summary judgment (i.e., by submitting the statements of material facts required by Local Rule 56.1 and basing their arguments on the substantive evidence rather than Massie's allegations), the Court will analyze it as such.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The defendant must initially show that there is either affirmative evidence demonstrating that the plaintiff will be unable to prove his case at trial or an absence of evidence to support the plaintiff's case.

*United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the defendant makes either such showing, the burden shifts to the plaintiff, who must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (internal punctuation omitted).

"On summary judgment, a court may not weigh conflicting evidence or make credibility determinations of its own" but must instead "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).

#### B. Conceded Aspects of the Motion

Certain aspects of Defendants' motion to dismiss or for summary judgment are expressly conceded by Massie, and independently of those concessions, the Court finds that the undisputed record evidence mandates that some of the relief sought be granted. *See generally United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (noting that "summary judgment, even when unopposed, can be entered only when 'appropriate'" under Rule 56). The Court will therefore grant summary judgment to Cobb County on all of Massie's claims. The Court will also grant summary judgment to Gallimore, in his individual capacity, on Massie's Eighth Amendment claim.

Finally, Defendants are entitled to summary judgment on Massie's official-capacity claims against Gallimore—including the official-capacity claims added by way of Massie's amended complaint—which are

duplicative of his claims against the County itself. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity against local government officials, because local government units can be sued directly ...."); *Thornton v. Jackson*, 998 F.Supp.2d 1365, 1378 (N.D. Ga. 2014) (dismissing official-capacity claims against county commissioner as duplicative of claims against the county).

Thus, the remaining claims are individual-capacity claims against Gallimore for violation of Massie's rights under the Fourth and Fourteenth Amendments, violation of article 1, section 1, paragraph 17 of the Georgia Constitution, and assault and battery.

### C. Massie's Federal Claims

Gallimore argues that Massie "chose to travel under the wrong constitutional right—alleging violations of the Eighth and Fourteenth Amendments, rather than the Fourth Amendment." [37–1] at 2. Alternatively, Gallimore contends that (1) irrefutable video and medical evidence shows that any use of force was objectively reasonable and resulted in at most *de minimis* injuries to Massie, and (2) he is entitled to qualified and official immunity.

### 1. Fourteenth Amendment Claim

 The Court agrees with Gallimore that under the circumstances of this case Massie cannot premise any excessive-force claim on rights secured by the Fourteenth Amendment. The Fourth, Fourteenth, and Eighth Amendments are all potentially implicated by an excessive-force claim; "the plaintiff's status as a person undergoing seizure, a pretrial detainee, or a convicted person determines which constitutional protection he is afforded." *Calhoun v.*

*Thomas*, 360 F.Supp.2d 1264, 1270 (M.D. Ala. 2005).

The Supreme Court has instructed that "*all* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach" under the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Massie argues that he properly pled a Fourteenth Amendment excessive-force claim because the use of force allegedly occurred at a time "beyond the point at which the formal arrest had ended." [44] at 6. This argument is unavailing. "Although the line is not always clear as to when an arrest ends and pretrial detainment begins, the facts here fall on the arrest end." *Garrett v. Athens–Clarke County*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (analyzing an excessive-force claim brought on behalf of an arrestee who died shortly after—and still at the scene of—an arrest under the Fourth Amendment, not the Fourteenth amendment); *accord Saunders v. Duke*, 766 F.3d 1262, 1266–67 (11th Cir. 2014) (holding that an arrestee who alleged he was subjected to excessive force after he had been subdued and handcuffed for a long period of time stated a claim under the Fourth Amendment).

Massie has been permitted to amend his complaint to assert a Fourth Amendment claim, and the Court concludes that it is under that rubric that any excessive-force claim arising from the incidents of February 24, 2014 must be analyzed. Gallimore is therefore entitled to summary judgment on Massie's Fourteenth Amendment claim.

## 2. Fourth Amendment Claim

 With respect to Massie's Fourth Amendment claim added by amendment to the complaint, Gallimore argues that he is entitled to qualified immunity. "Qualified immunity shields from liability 'all but the plainly incompetent or one who is knowingly violating ... federal law.'" *Jones v. Fransen*, 857 F.3d 843, 851, 2017 WL 2198126, at *4 (11th Cir. 2017) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). Because it is undisputed that Gallimore was acting within his discretionary authority at all relevant times,

> the burden shifts to [Massie] to demonstrate that qualified immunity is inappropriate. To do that, [Massie] must show that, when viewed in the light most favorable to him, the facts demonstrate that [Gallimore] violated [Massie's] constitutional right and that that right was "clearly established in light of the specific context of the case, not as a broad general proposition," at the time of [Gallimore's] actions. [The Court] may decide these issues in either order, but, to survive a qualified immunity defense, [Massie] must satisfy both showings.

*Id.* (internal punctuation and citations omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

 Fourth Amendment excessive-force claims are evaluated under an "objective reasonableness" standard that requires the Court to ask "'whether the officer's conduct is objectively reasonable in light of the facts confronting the officer.'" *Id.* at 852, 2017 WL 2198126, at *6 (quoting *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009)). Factors to be considered include:

> (1) the severity of the crime; (2) whether the individual poses an immediate threat to the safety of the officers or others; (3) whether the individual actively resists or tries to evade arrest by flight; (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; (6) the severity of the injury; and (7) whether officers applied force in good faith or rather did so maliciously and sadistically.

*Id.* (internal punctuation and citations omitted). This inquiry must be resolved based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Crenshaw*, 556 F.3d at 1290). And it must be remembered that "the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

In this case, the undisputed evidence compels the conclusion that any use of force by Gallimore was not excessive but rather was well within that degree of force that is implicitly permitted to carry out an arrest. Although the first two *Jones* factors weigh in favor of Massie—driving under the influence is a relatively minor crime in the context of this circuit's Fourth Amendment caselaw, and at this stage of the lawsuit the Court cannot find that Massie posed a significant risk to the safety of the officers or others—the remaining factors support Gallimore's claim of qualified immunity.

Massie did not resist arrest per se, but the audio and video recordings show him disregarding the officers' instructions, interrupting them, calling them names, and generally being uncooperative. The alleged use of force occurred as Gallimore was trying to place Massie in the back of the patrol car. It was a one-time incident, not a situation involving the repeated hitting, kicking, or tasing of an arrestee. Furthermore, although the experience was undoubtedly an unpleasant one for Massie,

the injuries he suffered were minor and required little if any medical treatment.

In this circuit, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000); *J.B. v. Amerson*, 519 Fed.Appx. 613, 617 (11th Cir. 2013) ("A law enforcement officer's application of *de minimis* force to a lawfully arrested person is objectively reasonable.").

In *Nolin*, *id.* at 1255, this principle was held to foreclose a Fourth Amendment claim by a plaintiff who alleged that an officer "grabbed him from behind by the shoulder and wrist, threw him against a van ..., kneed him in the back and pushed his head into the side of the van," causing him to suffer bruising to his head, chest, and wrists that disappeared quickly and did not require medical treatment.

Similarly, in *Jones v. City of Dothan*, 121 F.3d 1456, 1461 (11th Cir. 1997), officers were entitled to qualified immunity from an excessive-force claim where the facts showed that they "slammed [the plaintiff] against the wall, kicked his legs apart, [and] required him to raise his arms above his head," causing him to suffer pain to his arms and knees.

The facts of this case, when viewed in the light most favorable to Massie, show that while his arrest might not have been flawless, the force used by Gallimore was objectively reasonable under the circumstances. At a minimum, the cases discussed above and numerous others from the Eleventh Circuit were sufficient in February 2014 to allow a reasonable officer to conclude that the use of force was lawful. Accordingly, even if Gallimore's conduct did violate Massie's Fourth Amendment rights, that violation did not run afoul of clearly established law, and Gallimore is entitled to qualified immunity. *Smith v. City of Atlanta*, No. 1:08-cv-2618-

BBM, 2009 WL 2589633 (N.D. Ga. Aug. 19, 2009) (granting qualified immunity to an officer on an excessive-force claim where the plaintiff claimed the officer suddenly, violently, and without provocation threw him to the sidewalk while the plaintiff was handcuffed). The Court will therefore grant summary judgment in favor of Gallimore on Massie's Fourth Amendment claim.

### D. Massie's State–Law Claims

Massie's complaint also asserts claims against Gallimore for violation of article 1, section 1, paragraph 17 of the Georgia Constitution and assault and battery. Gallimore moved for summary judgment on the basis that he is entitled to official immunity from these claims. *See* [37–1] at 31–33. In response, Massie argues in a cursory fashion that "the record in this case clearly establishes that ... Gallimore acted with actual malice." [44] at 19.

Under Georgia law, "[a]n officer is entitled to official immunity for discretionary acts performed in his official capacity unless he acted with actual malice or intent to injure." *Dukes v. Deaton*, 852 F.3d 1035, 1044 (11th Cir. 2017). "Actual malice means 'a deliberate intention to do wrong, and does not include implied malice, i.e., the reckless disregard for the rights or safety of others.'" *Id.* (quoting *Murphy v. Bajjani*, 282 Ga. 197, 647 S.E.2d 54, 60 (2007)).

The only record evidence cited by Massie in support of his claim that Gallimore acted with actual malice is the deposition testimony of John Denley wherein Denley describes Massie's version of events. Such evidence shows at most reckless disregard for Massie's well-being; it does not show that Gallimore acted with actual malice. Gallimore is therefore entitled to official immunity from Massie's state-law claims.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for leave to file excess pages [49] is granted *nunc pro tunc* to October 26, 2016.

Plaintiff's motion to amend his complaint [41] is granted and the Clerk is directed to docket the document attached to that motion [41–1] as a supplement to Massie's original complaint. Defendants are not required to file any response to the amended complaint.

Defendants' motion to dismiss or in the alternative for summary judgment [37] is granted, and the Court grants summary judgment in favor of Defendants on all claims in Massie's original complaint as well as on the Fourth Amendment claim added by amendment to the complaint. The Clerk is directed to close this case.

IT IS SO ORDERED this 1st day of June, 2017.